## LESTER TOMPKINS *vs.* QUAKER OATS COMPANY.

Middlesex.   March 29, 1921. — June 2, 1921.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Actionable Tort. Sale, Caveat emptor. Negligence,* In mixing of feed for farm animals. *Deceit. Practice, Civil,* Law of the case, Requests, rulings and instructions.

A manufacturer of a prepared feed for farm animals which in its ordinary state is not harmful to poultry, is not liable in an action of tort for negligence brought against him by a purchaser of some of the feed from a dealer, to whom the defendant had sold it and who was not an agent of the defendant, in which action the plaintiff claimed damages for a loss of poultry resulting from the feed so purchased having been negligently mixed by the defendant so that salt, commonly used as a desirable ingredient in commercial poultry feeds, was present in too large a quantity.

Statement by DE COURCY, J., of the rule, *caveat emptor,* and the exceptions thereto.

Rulings adopted by a trial judge at the request of a party and given by him to the jury as instructions become the law of the case, irrespective of whether they are too favorable to the party requesting them; and if, according to the law as thus stated to the jury, there is no warrant for a finding for the adverse party, it is error to submit the case to the jury.

At the trial of an action by a poultry farmer against a manufacturer of feed for farm animals for a loss of poultry alleged to have been caused by negligence of the defendant in the mixing of a commercial feed which the defendant had sold to a dealer, not his agent, from whom the plaintiff had purchased it, the trial judge at the defendant's request ruled and instructed the jury that there was no evidence that the device or the methods of manufacture used by the defendant in the preparation of the feed were not reasonably adapted to its safe and proper and careful preparation; that a manufacturer of an article of food for poultry which is not inherently dangerous to poultry is not liable, in an action of tort for negligence, for damages due to negligence in manufacture, nor is he bound at his peril to know that particular lots of his product are not dangerous to animals and poultry if fed to them; and that, if the jury found that there were lumps of salt in the feed used by the plaintiff, that fact was not of itself evidence of negligence of the defendant in the mixing or sale of the feed. Subject to an exception by the defendant, the action was submitted to the jury who found for the plaintiff. *Held,* that, upon the instructions given, which had become the law of the case, a finding for the plaintiff was not warranted, and that the defendant's exceptions must be sustained.

At the trial of an action of tort for deceit, brought by a poultry farmer against a manufacturer of feed for farm animals for a loss of poultry alleged to have been caused by giving to them for food an improperly mixed feed which the defendant had sold to a dealer, not his agent, from whom the plaintiff had purchased

it relying on representations by the defendant that it was "always uniform in quality," was "absolutely safe to feed," and the "ideal feed for all farm animals," there was neither allegation nor proof that the defendant sold the particular lot of feed in question to the dealer, knowing it to be unfit for poultry. The judge at the defendant's request instructed the jury in substance that statements upon which an action of deceit may be founded must be statements of fact, not of opinion; that, upon all the evidence, the only statements of the defendant in regard to the feed on which the plaintiff relied were "sellers' talk;" that honest statements of opinion will not found an action for deceit even though the opinion is not a correct one; and that there was no evidence that the defendant did not believe the statements made by it as to feed to be true. The defendant also asked for an instruction that, upon all the evidence, there was no evidence of any misrepresentation of fact by the defendant in any statement on which the plaintiff relied. The judge gave the last instruction, adding, subject to an exception by the defendant, " but I refer you to exhibits three and four in reference to that." The exhibits referred to were a circular letter of the defendant giving a summary of a test made by the Massachusetts experiment station as to the digestibility of the feed, and an advertising booklet of the defendant which contained the representation above quoted. *Held*, that the reference to the exhibits nullified the ruling to which it was added and in the circumstances was prejudicial error.

CONTRACT OR TORT, with a declaration in one count, described in the opinion. Writ dated November 13, 1918.

In the Superior Court, the action was tried before *Irwin*, J. Material evidence and rulings and instructions by the judge are described in the opinion. At the close of the evidence, the defendant asked that a verdict be ordered in its favor. The motion was denied. The jury found for the plaintiff in the sum of $12,900; and the defendant alleged exceptions.

*J. G. Palfrey*, (*R. J. Cotter & M. C. Taylor* with him,) for the defendant.

*H. D. McLellan*, for the plaintiff.

DE COURCY, J. This is an action to recover damages for the death of a large number of hens, alleged to have been killed by salt in Schumacher feed, manufactured by the defendant. The plaintiff bought the particular bags of feed alleged to have caused the loss from the Whitney Coal and Grain Company of Concord, which was a purchaser from and not a selling agent of the defendant. The declaration alleged that the death of the poultry "was caused by the negligence and improper mixing and compounding of the said 'Schumacher Feed' by the said defendant," in consequence whereof the feed which he purchased " contained dangerous and deleterious substances." With the exception of certain

phrases in his charge, which will be referred to later, the presiding judge submitted the case to the jury as one based on negligence. For instance he said: "the same rules of law apply to this as in all the cases that you have tried, negligence of the defendant and due care of the plaintiff." Again, "unless and until you are satisfied that there was negligence on the part of the defendant you will go no further, you stop, and your verdict would be for the defendant;" and "The plaintiff asserts here that the negligence upon which he bases his case was caused by the defendant at its place of manufacture."

As was said by Bowen, L. J., in *Thomas* v. *Quartermaine,* 18 Q. B. D. 685, 694: "the ideas of negligence and duty are strictly correlative, and there is no such thing as negligence in the abstract, negligence is simply neglect of some care which we are bound by law to exercise towards somebody." It is a long established general rule that the manufacturer of an article is not liable to those who have no contractual relations with him for injuries resulting from negligence in its manufacture. This has been based on the various grounds of the absence of a legal duty to the plaintiff to use care in making the article; the break in the chain of legal causation; and the multiplicity of suits thought likely to result if the action were allowed. *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341. *Windram Manuf. Co.* v. *Boston Blacking Co. ante,* 123, and cases cited. *Winterbottom* v. *Wright,* 10 M. & W. 109. *Huset* v. *J. I. Case Threshing Machine Co.* 120 Fed. Rep. 865. This general rule is subject to certain well settled qualifications or exceptions. One, which recognizes the liability to third persons on grounds of negligence in the preparation of food for human consumption, is not applicable here, and need not be discussed. *Wilson* v. *J. G. & B. S. Ferguson Co.* 214 Mass. 265, 48 L. R. A. (N. S.) 219 note. Another established exception recognizes the existence of a duty of care in favor of strangers to the contract, where the product is inherently or commonly recognized as dangerous to human life or health; such as poisonous drugs and explosives. *Thomas* v. *Winchester,* 6 N. Y. 397. *Carter* v. *Towne,* 98 Mass. 567. *Wellington* v. *Downer Kerosene Oil Co.* 104 Mass. 64. *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593. And there is a tendency in certain courts to extend this doctrine to cases where an article not inherently dangerous becomes so by reason of neg-

ligent preparation. *MacPherson* v. *Buick Motor Co.* 217 N. Y. 382. *Johnson* v. *Cadillac Motor Car Co.* 261 Fed. Rep. 878.

In the present case there was no evidence that Schumacher feed, in its ordinary state, was harmful to poultry. The testimony was all to the contrary; including that of the plaintiff, who had used it for two or three years before his loss, early in 1918. The complaint against the feed then bought by him is that salt, although commonly used as a desirable ingredient in commercial poultry feeds, was present in too large quantity; that this excess quantity was due to negligence in the process of mixing, and that it was responsible for the death of the poultry.

In instructing the jury as to the law applicable the presiding judge adopted the following requests submitted by the defendant: "Two: Upon all the evidence there is no evidence that the device used by the defendant in the preparation of the product used by the plaintiff was not reasonably adapted to the safe and proper and careful preparation of the same." "Three: Upon all the evidence there is no evidence that the methods of manufacture used by the defendant in the preparation of the product used by the plaintiff were not reasonably adapted to the safe and proper and careful preparation of the same." "Thirteen: A manufacturer of an article of food for poultry which is not inherently dangerous to poultry is not liable in an action of tort for negligence, for injuries due to negligence in manufacture." "Sixteen: A manufacturer of feed for poultry is not bound at his peril to know that particular lots of his product are not dangerous to animals and poultry if fed to them." "Fifty-two: If you find there were lumps of salt in the Schumacher feed used by the plaintiff, that fact is not of itself evidence of negligence of the defendant in the mixing or sale of the feed." Regardless of whether these instructions were too favorable to the defendant, they became the law of the case. Applying the law as thus stated to the facts disclosed in the record, we find no warrant for a verdict in favor of the plaintiff on the basis of negligence.

The plaintiff also argues that he was entitled to recover on the ground of deceit. As already appears, the declaration sounded in negligence, and did not contain the requisite elements of an action of deceit, tersely stated by Church, C. J., in *Arthur* v. *Griswold*, 55 N. Y. 400, 410, as "representations, falsity, *scienter*, deception

and injury." However, as no question of pleading was raised, and the issue of deceit was involved in the trial, we consider this aspect of the case. *Roberts* v. *Anheuser Busch Brewing Association*, 211 Mass. 449. The charge does not seem to contain an instruction to the jury as to what the plaintiff should prove to establish liability based on deceit. And this issue was confused with that of negligence when the judge said: "Now, if you are satisfied that the plaintiff is entitled to recover, he having shown negligence on the part of the defendant, that representations made by the defendant were not true, the representations caused him to buy this brand of feed, if you find negligence on the part of the defendant then you go to the question of the plaintiff's due care." At the end of the charge the judge gave these requests of the defendant, which thereupon became the law of the case: " Nineteen: Statements upon which an action of deceit may be founded must be statements of fact, not of opinion." " Twenty-two: Upon all the evidence the only statements of the defendant in regard to Schumacher feed on which the plaintiff relied were only 'sellers' talk.'" " Twenty-three: Honest statements of opinion will not found an action for deceit even though the opinion is not a correct one." " Twenty-five: Upon all the evidence there is no evidence that the defendant did not believe the statements made by it as to Schumacher feed." The defendant also requested the following: " Twenty: Upon all the evidence there is no evidence of any misrepresentation of fact by the defendant in any statement on which the plaintiff relied." This the judge gave; adding, however, subject to the defendant's exception, " but I refer you to exhibits three and four in reference to that." Exhibit 3 was a circular letter sent by the defendant to the plaintiff, dated June 30, 1916, giving a summary of a test made by the Massachusetts Experiment Station, as to the digestibility of Schumacher feed. Exhibit 4 was an extract from an advertising booklet of the defendant. From its context the following detached sentences are now selected by the plaintiff: " Always uniform in quality . . . Absolutely safe to feed . . . The ideal feed for all farm animals." In view of the above quoted charge of the judge as to statements of opinion, and "Sellers' talk," it is difficult to see how these exhibits could properly modify request twenty. The natural effect of referring the jury to them, without any ex-

planation of their proper legal effect, was to practically nullify the request itself, and was prejudicial error.

It should be added that there is neither allegation nor proof that the defendant sold this particular shipment to its customer, the Whitney Coal and Grain Company, knowing that the feed was unfit for poultry. See *Windram Manuf. Co.* v. *Boston Blacking Co. ante*, 123.

<div align="right">

*Exceptions sustained.*