EMMA CHRISTENSEN, administratrix, *vs.* ARTHUR F. BREMER
& another.

SAME *vs.* NEW ENGLAND ROAD MACHINERY COMPANY.

SAME *vs.* ARTHUR F. BREMER & another.

SAME *vs.* NEW ENGLAND ROAD MACHINERY COMPANY.

Worcester.    September 28, October 13, 1927.— March 7, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, &
SANDERSON, JJ.

*Workmen's Compensation Act,* Action for insurer against negligent third
person. *Practice, Civil,* Exceptions. *Negligence,* Of manufacturer of
defective article, Of proprietor of gravel bin, Res ipsa loquitur. *Evi-
dence,* Presumptions and burden of proof.

While it was error, at the time prejudicial to the plaintiff, for the judge
presiding at the trial in the Superior Court of an action by an adminis-
trator for causing the conscious suffering and the death of his intestate,
in which the defendant has alleged in his answer that "the plaintiff has
entered into an agreement and received compensation under the pro-
visions of G. L. c. 152, the workmen's compensation act so called,"
to deny a motion by the plaintiff, presented on the second day of the
trial, that the defendant be required to strike from his answer that part
which referred to the plaintiff's receiving compensation under the work-
men's compensation act because the plaintiff would not admit that the
action was being prosecuted by the plaintiff for the benefit of the insurer
under the act of his intestate's employer, such error was cured when the
judge on the last day of the trial allowed the motion and instructed the
jury that, in the assessment of damages, if they came to that question,
they were to "treat the case as though there had not been any reference
to the insurance company in the thing at all," as though the plaintiff
"had never elected to receive compensation from the insurance com-
pany . . . as though there had not been any question of insurance here
at all."

The owner of a gravel pit purchased from a corporation by a conditional
sale a gravel bin and machinery for operating it, which were installed
by an employee of the corporation assisted by the owner and an em-
ployee of his, according to plans and specifications furnished by the
corporation.   The corporation had reason to believe that purchasers
of sand and gravel from the owner would receive delivery of them be-
neath the structure from the compartments of the overhead bin, and
that, should the structure collapse, the men beneath the bin would prob-
ably be killed or suffer grievous bodily harm.   In an action against the
corporation for causing conscious suffering and the death of the driver

of a team for a town which was a customer of the owner of the pit, it was *held*, that, even if it appeared that the accident was the result of negligence of the defendant and its servant and agent in the manufacture and setting up of the bin and machinery, the corporation could not be held liable.

In an action brought in the circumstances above described against the owner of the pit, bin and machinery, it was *held*, that it was proper for the judge to refuse to rule that the doctrine *res ipsa loquitur* had any application.

The jury considering the action against the owner, above described, returned to the court room and asked the judge, "If faulty carpenter work was shown would that necessarily prove negligence on the part of" the owner. The judge replied, "No," and further charged the jury in substance that the owner would not necessarily be liable in case of such faulty workmanship, but that he would be liable "only in the event that a reasonably careful, and cautious, and prudent man, situated as he was, would have discovered and known that it was faulty workmanship and failed to guard his business visitors against the possible consequences of it." *Held*, that no error was shown.

FOUR ACTIONS OF TORT, the first and second actions being by the administratrix of the estate of Charles P. Christensen to recover under G. L. c. 229, §§ 5, 6, for the causing of his conscious suffering and death; and the third and fourth actions being by the same plaintiff to recover for loss of her intestate's horses, dump cart, and harnesses. Writs in the first and second actions dated November 12, 1924, and in the third and fourth actions dated December 9, 1924.

· The answer originally filed by the defendants in the first action, on January 26, 1925, set up the contention respecting the workmen's compensation act quoted in the opinion. There was no such contention in the original answers in the other actions.

Trial of the four actions together began in the Superior Court before *Broadhurst*, J., on October 26, 1926. On the second day of the trial, the plaintiff filed a motion in the first action that that part of the answer which referred to the workmen's compensation act be struck out. In the circumstances stated in the opinion, that motion at that time was denied. The defendant in the second action then was permitted, with the same reservation by the judge, to amend its answer to contain the allegation with respect to the workmen's compensation act.

The plaintiff's evidence closed on October 28, and motions by the defendant in the second and the fourth actions (hereinafter called the Company) that verdicts be ordered in its favor, were allowed subject to exceptions by the plaintiff; as also were similar motions by the defendant O'Neil in the first and the third actions, without exceptions being saved by the plaintiff.

The defendant Bremer then rested and, following a colloquy with counsel, the judge made in the hearing of the jury the statement quoted in the opinion as to the position of the plaintiff respecting workmen's compensation. On that day, also, the plaintiff filed in the second action a motion to strike from the defendant's answer the references to the workmen's compensation act; and those motions in the first and the second actions were marked in the record as allowed.

The first and third actions then were submitted to the jury as to the defendant Bremer. During their deliberation, the jury returned and asked two questions of the judge, the second of which is quoted in the last paragraph of the opinion. To that question, the judge replied: "I say, no, it would not necessarily prove negligence. Not everybody can be a carpenter or a mason. Men who are not, and who want to have buildings built have to employ carpenters and masons. Possibly in the erection of their structures they are about there looking on, or giving an occasional direction, or actually taking part with their hands in driving nails through the boards, or laying brick, or what not. It comes down to just what I told you yesterday afternoon. The duty of the owner of the premises is to use reasonable care in their erection and maintenance, to avoid or prevent injuries to persons he invites to come on those premises to do business with him. The highest degree of skill and foresight that humanity is capable of is not required, because that would require the owner of the premises practically to be an insurer, and, as I told you yesterday, the owner is not an insurer. He is not bound to provide a safe place in which his business visitors may come to do business with him. He is bound only to use reasonable care, the care that the ordinary prudent, careful man, would use." Upon the plaintiff's excepting to this

portion of the supplementary charge, the judge further amplified it, stating in part: "And I say again Mr. Bremer is not necessarily, to use the words of your question, liable if there was faulty workmanship. It is only in the event that a reasonably careful, and cautious, and prudent man, situated as he was, would have discovered and known that it was faulty workmanship and failed to guard his business visitors against the possible consequences of it. That would make him liable."

The jury found for the defendant Bremer in the first and the third actions. The plaintiff alleged exceptions in all the actions.

The case was argued at the bar in September, 1927, before *Braley, Crosby, Pierce, Carroll, & Wait,* JJ., and afterwards was submitted on briefs to all the Justices.

*C. W. Proctor,* for the plaintiff in the first two cases.

*E. A. Ryan,* for the plaintiff in the second two cases, submitted a brief.

*C. C. Milton,* (*S. B. Milton & J. H. Meagher* with him,) for the defendants Bremer and another.

*J. P. Carr,* for the defendant New England Road Machinery Company.

PIERCE, J. These four actions of tort, by the same plaintiff against two different defendants, were tried together. In two of the cases the plaintiff seeks to recover for conscious suffering and death of her intestate; in the other two cases she seeks to recover for personal property damage.

The bill of exceptions shows that the declarations in the property damage cases were filed in court on January 5, 1925, and answers thereto on January 5 and January 21, 1925, respectively; that in the death actions substitute declarations were filed and allowed on October 28 and 26, 1926, respectively; that the answer of the defendants Bremer *et al.* contained general denials, an allegation of contributory negligence, and an averment that "the plaintiff has entered into an agreement and received compensation under the provisions of G. L. c. 152, the workmen's compensation act socalled."

On the opening day of the trial, the plaintiff's counsel

stated to the trial judge that the plaintiff administratrix was receiving compensation from the insurer of the decedent's employer under the provisions of the workmen's compensation act. Thereafter, the defendant New England Road Machinery Company filed, and the judge allowed, a motion to amend its answer so as to include an allegation in effect that the plaintiff had entered into an agreement and received compensation under G. L. c. 152, and additions and amendments thereto. The plaintiff filed written motions in the death actions that the defendants be required to strike out from their answers that part which referred to the plaintiff's receiving compensation under the workmen's compensation act. The judge declined at that time to grant the motions because the plaintiff would not "admit or agree that the action to recover for conscious suffering and death against each defendant is in fact being prosecuted in the name of the plaintiff for the benefit of the deceased's employer's insurer, under the act." At the close of the trial, following a conference at the bench, the "court stated in the hearing of the jury and for the purpose of the record" that "counsel for the plaintiff now says that the suit to recover damages for the conscious suffering and death of Charles P. Christensen, brought here in the name of the administratrix of his estate, is being prosecuted in the interest of the insurer of the town of Shrewsbury, the employer of the deceased, under the provisions of the workmen's compensation act." The bill of exceptions states that "The motion to strike out that part of the defendant's answer in said case referring to plaintiff's recovering compensation under the compensation act was not again called to the attention of the court by the plaintiff, or in any way renewed." It is to be observed, however, that the record shows that the plaintiff in each death action made a written motion to strike out from the answer the part referring to the plaintiff's receiving compensation under the workmen's compensation act, citing *Chaves* v. *Weeks*, 242 Mass. 156, *Portland Gas Light Co.* v. *Ruud*, 242 Mass. 272, *Hall* v. *Henry Thayer & Co.* 225 Mass. 151, *Turnquist* v. *Hannon*, 219 Mass. 560, and that the motion was allowed October 28, 1926.

The refusal to allow the plaintiff's motions at the time they were made was error and prejudicial to the plaintiff. But that error was cured by the subsequent allowance of the motions, and more particularly by that part of the charge, not excepted to, wherein the judge said: "I would like to have you bear in mind, Mr. Foreman and Gentlemen, that in the assessment of damages, if you come to that point, you treat the case as though there had not been any reference to the insurance company in the thing at all. Treat the thing wholly on its merits as though Mrs. Christensen had never elected to receive compensation from the insurance company. . . . if you get to the point of assessing damages assess them with reference to the right Mrs. Christensen has, as widow and administratrix, to recover, as though there had not been any question of insurance here at all."

The facts shown by the record, succinctly stated, pertaining to the exception taken by the plaintiff to the allowance of the motions to direct verdicts, are as follows: The defendant Arthur F. Bremer ran a sand business alone in the town of Shrewsbury. After he had been in the business about a month, a representative of the New England Road Machinery Company (hereinafter called the Company) came to the pit and asked him why he did not go into the gravel business too, to which Bremer replied "he had no money or little of it." Later, the president said he would put the machinery up for him and talked with Bremer about the kind of bin he ought to have, and told him that if he took the machinery from the Company it would give him the drawings for the bin. Bremer thereupon purchased the machinery under a lease form of agreement, which was read to the jury, and received the drawings from the Company. The bin shown by the plans was supposed to hold 150 tons of gravel, and at the time of the accident "there were probably 75 tons of gravel in it." It was a large, rectangular, box like structure sixteen feet wide, twenty-four feet long, built of heavy planks and timbers with four compartments for sand and gravel. When installed it was placed upon nine wooden supports, nine feet high and eight inches wide and eight inches thick. They were set on cement piers

with a steel rod running through the cement pier into the bottom end of the eight inch by eight inch posts probably five or six inches, and the posts were braced with four inch by four inch timbers.  A place for the loading of a team with sand or gravel was constructed under the bin.

The machinery sold by the Company to Bremer arrived at the sand pit in May, 1924, after the placing of the bin on the trestle support.  The Company sent one Sawyer to set up the machinery and Bremer and his man helped him. The machinery consisted of a fifteen horse power motor, a bucket elevator, a revolving screen twenty feet long and the machinery to drive it.  The screen was laid on an angle, and put on top of the bin for the purpose of screening out the sand and gravel in different sizes in such a way that they would drop into the respective compartments.

Some weeks after the machinery was installed and a short time before the accident, the Company, on notification that the screen ran so fast that gravel was carried beyond the opening it ought to fall through, made a change in the size of the gears, doing nothing else, so far as the record discloses, to the machinery or structure.  On July 23, while the intestate and his team were under the bin and separator, and while the power was on, the bin "settled right over endways," the supporting posts tipped, "They went down under the bin, the center ones and the other ones.  They folded right under the bin . . . .  When the supporting posts fell, the bin fell on top of the post; the post was still fastened to the bin and it fell right down on to the ground foundation . . . . As the bin tipped over it fell down and caught the horses and truck hard to the ground and the rocks under it."  There was no damage to the bin part of the plant as the result of the accident; and the machinery that was on the bin structure when the accident occurred was there at the time of the trial, and the same conveyor, screen and bin were then in use.

The collapse of the bin and supports designed to hold and sustain 150 tons of gravel under a weight of 75 tons of sand and gravel might warrantably have been found to be attributable to an inefficiency in the mechanical design, in a failure of Bremer properly to follow the plan which accompanied

the sale of the machinery, or in a combination of both. There was evidence that the structure would not have come down if there had been an efficient brace against it on each side; and there was a suggestion from an expert witness that the bin would not have fallen unless the pull of "the gravity . . . [fell] outside the posts," and that possibly two inches out of perpendicular would be enough movement to throw the gravity outside the posts.

The evidence was undisputed that Bremer, before the accident, had arranged to sell sand to the town of Shrewsbury; that the town sent teams with their workmen; and that the intestate was in charge of one of the teams of the town when the bin fell upon him.

As respects the actions against the Company, the question is: Did it owe a duty to persons who were in the class of persons expected by the Company to use the completed structure, though such persons did not stand in privity of contract with the Company; and, if so, did it use reasonable care that the plans, the design and specifications furnished by it to the defendant Bremer should be effective to insure the structure built in accordance with those plans from collapsing under the weight of a load of gravel and sand one half as great as the structure was designed to sustain?

While the defendant knew and contemplated that a structure would be built by Bremer to follow the plans, the design and specifications furnished him, and had reason to believe that purchasers of sand and gravel from Bremer would receive delivery of them beneath the structure from the compartments of the overhead bin, and, should the structure collapse, the men beneath the bin would probably be killed or suffer grievous bodily harm, the case nevertheless falls within the class of cases which hold that a manufacturer of an article is not liable for negligence in its manufacture to a third person with whom he has no contractual relation; *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341; *Windram Manuf. Co.* v. *Boston Blacking Co.* 239 Mass. 123; *Tompkins* v. *Quaker Oats Co.* 239 Mass. 147, 149; *Pitman* v. *Lynn Gas & Electric Co.* 241 Mass. 322–324; and is not within any exceptions to the general rule which is recognized in this

Commonwealth.  *Boston Woven Hose & Rubber Co.* v. *Kendall,* 178 Mass. 232, 236.  *Randall* v. *Newson,* 2 Q.B.D. 102.  *Wellington* v. *Downer Kerosene Oil Co.* 104 Mass. 64.  *Boston & Albany Railroad* v. *Shanly,* 107 Mass. 568.  *Colvin* v. *Peabody,* 155 Mass. 104.  *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593.  *Coughtry* v. *Globe Woolen Co.* 56 N. Y. 124.  *Devlin* v. *Smith,* 89 N. Y. 470.

The motions for directed verdicts for the New England Road Machinery Company were allowed rightly.

There was no evidence that O'Neil was a partner of Bremer, and his motions for directed verdicts were allowed rightly.

The case was properly submitted to the jury in the actions against Bremer.  Respecting these actions, the exception, if one were saved, of the plaintiff to the refusal to rule as to the doctrine of *res ipsa loquitur* is overruled.  The collapse may have resulted solely from a defect in the plan, design or drawing; it may have resulted partially from a failure to follow the plans and detail drawings if such there were; or it may have resulted from the combined default of the defendants.  *Reardon* v. *Boston Elevated Railway,* 247 Mass. 124, 126.  *DiLeo* v. *Eastern Massachusetts Street Railway,* 255 Mass. 140, 143.  *Keller* v. *New York, New Haven & Hartford Railroad,* 255 Mass. 526, 528.  There was no error in the answer "No" made by the judge to the question asked by the jury: "If faulty carpenter work was shown would that necessarily prove negligence on the part of Mr. Bremer?"

It results that all exceptions are overruled.

*So ordered.*