## SBICCA–DEL MAC, Inc., v. MILIUS SHOE CO.

### No. 459.

District Court, D. Massachusetts.

Dec. 12, 1940.

624

Singer, Stoneman & Kurland and David Stoneman, all of Boston, Mass., for plaintiff.

Arthur E. Whittemore and Nutter, McClennen & Fish, all of Boston, Mass., and John H. Cassidy and J. Sydney Salkey, both of St. Louis, Mo., for defendant.

McLELLAN, District Judge.

This civil action came on for hearing upon five motions filed by the plaintiff. The first motion is to strike portions of

the defendant's answer. The second motion is to dismiss the defendant's counterclaim numbered 1. The third motion is to strike Paragraph 4 of the defendant's first counterclaim. The fourth motion is to dismiss the defendant's counterclaim numbered 2, and the fifth to strike Paragraph 4 of this second counterclaim.

The action was brought originally in the state court, and was removed here by the defendant. The plaintiff seeks to recover certain royalties from the defendant under the terms of an agreement in writing executed by the parties September 1, 1937. This agreement, a copy whereof is incorporated herein by reference, contains a license from the plaintiff to the defendant under a number of patents either owned by the plaintiff or under which the plaintiff held an exclusive license. The agreement, so far as anything to the contrary appeared, was on a printed form, at the end whereof, but before the signatures thereto, appears a list of seventeen patents.

### The Motion to Strike Portions of the Defendant's Answer.

The defendant, admitting the execution of the agreement, denies that it has manufactured shoes embodying the inventions or improvements covered by the patents, and sets up several other alleged defenses. It is to two of these additional defenses that the plaintiff's motion to strike is principally directed. The portions relating to the first defense appear in Paragraphs 3 and 7 of the answer. Paragraph 3 reads in part: "Defendant denies that said written instrument is a good and valid agreement; denies that the said instrument constituted the whole of the agreement, if any, between the parties thereto; * * *."

Paragraph 7, of which Subdivision (b) now becomes immaterial in view of a withdrawal from the plaintiff's motion of any present attack thereon, reads:

"7. (a) As consideration for and part of any agreement witnessed by said written instrument Exhibit A, it was understood and agreed between the parties thereto, at the time of the execution of said instrument, that defendant was to be accorded the most liberal treatment granted any other shoe manufacturer by plaintiff.

"(b) Prior to the actual execution and delivery of said written instrument and on or about October 1, 1937, plaintiff notified defendant in writing as follows:

" 'We beg to notify you that Sbicca-Del Mac, Inc., has changed its royalty charge in the following manner:

" 'Where the number of pairs of shoes upon which a Licensee pays royalty shall during the course of any year beginning September 1st, 1937, exceed 1,000,000 pairs, a credit equal to ten percent (10%) of the amount of royalty so paid shall be set up in favor of the Licensee and applied towards the payment of royalties for the ensuing year. It is further directed that notice of this change shall be given all Licensees, both present and future.

"We understand you are about to sign a license agreement with us, and you may consider this change as applying in your case if such license is signed."

"(c) Subsequent to the execution of said written instrument plaintiff granted to other shoe manufacturers who had executed similar instruments a discount or allowance of twenty-five (25%) per cent. on royalties for shoes manufactured from January 1, 1938, to August 31, 1939, inclusive, and has offered such discount to defendant.

"(d) Subsequent to the execution of said written instrument plaintiff executed with Kleven Shoe Company, of Spencer, Massachusetts, an agreement similar to said written instrument Exhibit A, but granted to said Kleven Shoe Company free royalties for a certain period of time from and after September 1, 1937, understood to be and therefore alleged to be eighteen months. But similar allowances have not been made, and although requested have not been offered to defendant.

"(e) By reason of the foregoing, in the computation of royalties, if any, which may be due from defendant to plaintiff under the said written instrument, defendant is entitled to the most liberal discounts and allowances accorded by plaintiff to any other shoe manufacturer.

"(f) At the time of the execution of said written instrument it was further understood and agreed that in the event any one manufacturer refused to execute a license with plaintiff, and plaintiff failed, within thirty days, to bring a suit for infringement against said manufacturer, it was open to defendant to refuse to pay royalties under said written instrument, as witnessed inter alia by a letter in behalf of plaintiff addressed to Mr. Will Milius, an officer of

defendant, dated September 4, 1937, being in part as follows:

" 'To sum it up Will, if all manufacturers pay 1¢ a pair for this method, I feel you will be perfectly willing to, and if any one manufacturer refuses to pay, that leaves it open for you to refuse to pay.' "

"(g) Many shoe manufacturers throughout the United States were on September 1, 1937, making shoes substantially like the skeleton insole shoes manufactured by defendant and by substantially the same methods and have continued to do so since that date, but plaintiff has failed, refused and neglected to bring suit against said manufacturers for infringement. Wherefore, defendant, under said contemporaneous agreement and understanding is not bound to pay plaintiff any royalties which might otherwise be due under the said written instrument Exhibit A".

■ By its motion to strike, the plaintiff in effect seeks to attack the legal sufficiency of the defense, if any, pleaded in this portion of the defendant's answer. But a motion to strike under Rule 12 (f) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides that upon motion by a party "the court may order any redundant, immaterial, impertinent or scandalous matter stricken from any pleading", is not ordinarily an appropriate remedy to test the legal sufficiency of a pleading. United States v. Fay & Son, D.C., 31 F.Supp. 413; Dysart v. Remington Rand, Inc., D.C., 31 F.Supp. 296; Radtke Patents Corp. v. C. J. Tagliabue Mfg Co., D.C., 31 F.Supp. 226; see, also, Holtzoff, New Federal Procedure and the Courts, p. 42. If under some circumstances the legal sufficiency of a pleading may be attacked by a motion to strike under Rule 12(f), this is not quite such a case. The ultimate determination of the question whether the portions of the answer here attacked constitute a defense depends in part upon a consideration of the Parol Evidence Rule, and its applicability in the light of such authorities as Williston on Contracts, Revised Edition, Sec. 633; Wigmore on Evidence, Second Edition, Section 2430; Restatement of Contracts, Section 240.

As I took occasion to say in O'Reilly v. Curtis Publishing Co., D.C., 22 F.Supp. 359, 361: "A motion to strike was never intended to furnish an opportunity for the determination of disputed and substantial questions of law. Motions to strike have been allowed in equity apart from any rule of court, and they were not unknown in actions at common law. See Chaves v. Weeks, 242 Mass. 156, 136 N.E. 73; Christiensen v. Bremer, 263 Mass. 129, 160 N. E. 410. The function of a motion to strike any redundant, impertinent or scandalous matter in any pleading is stated in Haberman v. Kaufer, 60 N.J.Eq. 271, 274, 47 A. 48, 49, substantially as follows: In order to succeed in a motion to strike out matter from an answer it must be shown that 'the matter criticized is so unrelated to the complainant's claim as to be unworthy of any consideration as a defense' and that if the part of the answer objected to 'be found to be so connected with the subject-matter of the complainant's suit that it may fairly be deemed to present some question, of either law or fact, which the court ought to hear and determine, then it cannot be stricken out as impertinent, but must be considered, and its sufficiency must be passed upon as a defense, either of fact or law, to the action.' See, also, Commonwealth Title Insurance and Trust Company v. New Jersey Lime Company, 86 N.J.Eq. 450, 100 A. 52."

■ Without attempting to pass upon the question whether the foregoing allegations of the answer to which the motion to strike is addressed constitute a defense, and without intimating that they do, I conclude merely that the allegations are of such a character that their sufficiency ought not to be determined summarily upon a motion to strike. Insofar as the plaintiff's motion relates to the foregoing allegations of the answer, it is denied.

The plaintiff seeks also an order striking that portion of Paragraph 1 of the answer which "denies that said corporation (plaintiff) was duly organized * * * for the reasons hereinafter more fully * * * appearing in Paragraph 12," and striking Paragraphs 9, 12 and 13 of the defendant's answer. Paragraph 9 avers that the written instrument upon which suit is brought is invalid as against public policy "in that it requires an admission of validity as to each and all of the seventeen patents enumerated therein, and in that plaintiff required as a condition to a license under any of the patents defendant and all other shoe manufacturers take a license under all of said patents and admit validity of all of them."

Paragraph 12 reads as follows:

"12. The said written instrument is invalid and void in that it is the culmination or the agency of contracts, combination and conspiracy in restraint of trade or commerce among the several states, the facts and circumstances of which are as follows:

"(a) Prior to the organization and incorporation of plaintiff and prior to said written instrument, the several patents enumerated in said written instrument and in paragraph 1 of the bill of complaint, were held by several separate parties who were competing among themselves; certain of said patents being held by Sbicca Method Shoes, Inc., a Delaware corporation, other patents by Fred Maccarone and Del-Mac System Corporation, a New York corporation, other patents by John A. Kelly or his successor in title, and a patent by Anthony Ruggiero or his successor in title.

"(b) A suit was brought by Sbicca Method Shoes, Inc., against Wolf and Sons, Inc., in the United States District Court for the Eastern District of New York, and another suit was brought by said Fred Maccarone and Del-Mac System Corporation against Pincus & Tobias, Inc., also in the said court; the said suits involving respectively Sbicca original patents Nos. 1,838,-708 and 1,902,725, and Maccarone original patent No. 1,569,823. The said original Sbicca and Maccarone patents are the original patents upon which the reissue patents listed in the said written instrument were granted. The court held the said Sbicca and Maccarone patents invalid, relying upon prior art which included the patents as aforesaid owned by John A. Kelly or his successor in title and said Anthony Ruggiero or his successor in title, as more fully appears from the opinions of the court published in 11 F.Supp. 239 and 11 F.Supp. 248.

"(c) After said decisions, Sbicca Method Shoes, Inc., Fred Maccarone and Del-Mac System Corporation, with others unknown to defendant, conspired to form a combination in restraint of trade or commerce among the several states by pooling their patents with those belonging to said John A. Kelly or his successor in title as aforesaid and the patent belonging to said Anthony Ruggiero or his successor in title as aforesaid.

"(d) In furtherance of said conspiracy and combination by the several owners of the patents as aforesaid, plaintiff was organized as a corporation and contracts were made giving the said corporation the right to license shoe manufacturers under all of said patents but only when a shoe manufacturer took a license under all of them and agreed not to contest the validity of any one of them.

"(e) Defendant, and practically if not all other shoe manufacturers in the United States making skeleton insole shoes, are engaged in interstate commerce by selling such skeleton insole shoes manufactured by them in interstate commerce. The shoe manufacturing business as it is and has been conducted in the United States at all the times aforesaid is essentially an interstate business.

"(f) The number and extent of such patents and their relation to the whole number of unexpired United States patents relating to skeleton insole shoes is such that the agreements between the owners of the patents as aforesaid, and the combination as aforesaid, places an undue restraint upon interstate commerce.

"(g) Plaintiff has never had any assets substantially except the right to license the said patents and the license fees and royalties which it has received therefrom, and it has had no business except that of licensing the said patents and collecting the license fees and royalties thereunder in furtherance of said combination and conspiracy in restraint of trade."

Paragraph 13 alleges that the plaintiff comes into court with unclean hands because of the matters set forth in paragraph 12.

Clearly enough, the mere fact that the plaintiff in a suit on a contract is engaged in a conspiracy to restrain interstate commerce in violation of statute is not of itself a defense to such a suit. Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679. But under certain circumstances, the contract itself may become a part of the conspiracy to such an extent as to become unenforceable because of that fact. Continental Wall Paper Co. v. Voight & Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486; E. Bement & Sons v. National Harrow Co., 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058. In United States v. Standard Oil Co., D. C., 33 F.2d 617, 630, it was held that where the contracting parties acknowledged the validity of all patents that might be issued

to each other "as and when issued under which it becomes licensed hereunder", such agreements in a cross licensing contract could not be sustained. The decision of the Circuit Court of Appeals in this case was reversed by the Supreme Court in Standard Oil Co. v. United States, 283 U. S. 163, 51 S.Ct. 421, 75 L.Ed. 926, but the question of these agreements having then become moot by virtue of the fact that the parties had mutually cancelled them, the Supreme Court expressly refrained from considering the matter. See, also, Ethyl Gasoline Corp. v. U. S., 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852. · The case of Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F.2d 999, 1009, relied upon by the plaintiff, is distinguishable from the case at bar in that it there appears that there was no proof "that the licensee was required to take a license covering all of the Steiner patents".

Without the expression of any view as to how the questions raised by Paragraphs 1, 9, 12, and 13 of the answer should be decided, it is enough to say that they are of such a character that they should not be decided summarily. These matters should be decided only after a hearing upon the merits and upon the principles heretofore stated as to the function of a motion to strike, these averments of the answer are not vulnerable to such a motion. As to these averments, the motion is denied.

■ The plaintiff's motion to strike portions of the defendant's answer contains paragraphs numbered 1 to 10, inclusive, and what has been said disposes of those numbered 1, 2, 4, 6, 8 and 9. The paragraphs of the motion numbered 3 and 5 were waived at the hearing and the seventh was also waived. This leaves only the paragraph numbered 10, which refers to paragraph 14 of the answer, which reads: "14. All persons having a joint interest have not been made parties plaintiff under Rule 19 of the Rules of Civil Procedure. Plaintiff does not have title to the patents listed in the said written instrument and in Paragraph 1 of the bill of complaint, but as to said patents and as to the said written instrument acts as agent for undisclosed principals unknown to defendant, plaintiff having merely the right as agent to grant licenses for use of the inventions set forth in said letters patents. Wherefore, for lack of necessary parties plaintiff, the sole plaintiff herein cannot maintain this suit."

This part of the motion to strike should, as the defendant virtually conceded at the hearing as a result of the discussion then had, be and it is granted and paragraph 14 ordered stricken from the answer.

### The Motion to Strike a Portion of the Defendant's First Counterclaim.

■ The plaintiff moves to strike all of paragraph 4 of the defendant's first counterclaim. This counterclaim alleges that the plaintiff and defendant executed a written instrument on September 1, 1937, a copy of which is annexed to the complaint; that the defendant paid license fees and royalties under the said instrument of $9,966.53, and that

"4. By reason of the facts alleged in sections 4 and 7 of the defendant's answer herein, which sections by reference thereto are adopted as a part of this counterclaim, plaintiff is indebted to defendant in the said sum of Nine Thousand Nine Hundred Sixty-Six ($9,966.53) Dollars and fifty-three cents.

"Wherefore defendant prays judgment against plaintiff in the said sum of Nine Thousand Nine Hundred Sixty-Six ($9,966.53) Dollars and fifty-three cents, with interest and its costs herein, and for any other and further relief to which it may be entitled."

In its brief, plaintiff states that it urges its motion to strike Paragraph 4 of the first counterclaim "insofar as said paragraph incorporates by reference the allegations contained in Paragraph 7 of the Answer."

The question raised by this motion is so similar to that raised by the motion to strike Paragraph 7 of the answer that no further discussion is here desirable. For reasons appearing in connection with the plaintiff's motion to strike this paragraph of the answer, this motion to strike portions of the first counterclaim is denied.

### The Plaintiff's Motion to Dismiss the Defendant's First Counterclaim.

■ This motion is not argued in the plaintiff's brief. I infer an intent to waive it without prejudice, of course, to the plaintiff's right to raise at the trial the same legal questions presented by the motion. In the absence of an express waiver by the plaintiff, I should add that if it is not impliedly waived, I do not feel justified at ·

this time in allowing the motion. Nor do I think I should deny it flatly and thus perhaps expose the plaintiff to the danger of being deprived of raising again in any form the legal questions presented by the motion. It seems unnecessary here to discuss or cite cases dealing with the doctrine of "the law of the case." The situation calls for an application of Rule 12(d) of the Federal Rules of Civil Procedure by ordering that the determination of the legal questions presented by the motion "be deferred until the trial," where they can be considered advantageously on the whole record.

### The Motion to Strike a Portion of the Defendant's Second Counterclaim.

The plaintiff moves to strike Paragraph 4 of the defendant's second counterclaim. The defendant's second counterclaim is in part similar to its first. Paragraph 4 thereof reads, however, as follows: "4. The said written instrument is a culmination or the agency of contracts, (sic) combination and conspiracy in restraint of trade or commerce among the several states, the facts and circumstances of which are stated in Section 12 of defendant's answer herein, which section by reference thereto is adopted as a part of this counterclaim."

The defendant then asserts that it has been damaged in the sum of $9,966.53, and will be further irreparably damaged unless the plaintiff is restrained. The defendant prays for threefold damages and for injunctive relief.

The motion to strike Paragraph 4 of the second counterclaim is so far related to the motion to strike Paragraph 12 of the answer which has been denied, that it needs no discussion. This motion is denied.

### The Plaintiff's Motion to Dismiss the Defendant's Second Counterclaim.

Some of the legal problems here involved are discussed, supra, in connection with the plaintiff's motion to strike Paragraphs 9 and 12 of the defendant's answer. All legal questions presented by this motion to dismiss the defendant's counterclaim can be determined better upon the whole record made at the trial and the determination of this motion is deferred until then pursuant to Rule 12(b) and (d), reading in part:

"(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto, if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted. * * *"

"(d) Preliminary Hearings. The defenses specifically enumerated (1)–(6) in subdivision (b) of this rule, whether made in a pleading or by motion, and the motion for judgment mentioned in subdivision (c) of this rule, shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial."