AMERICAN LEAGUE BASEBALL CLUB OF NEW YORK, INC., Plaintiff, v. JORGE PASQUEL et al., Defendants.*

Supreme Court, Special Term, New York County, November 25, 1946.

*Louis F. Carroll, Mark F. Hughes, Pierce Gerety* and *Joseph Moskovitz* for plaintiff.

*Jerome S. Hess, Monroe Collenburg* and *Walter M. Hinkle* for defendants.

WALTER, J. American League Baseball Club of New York, Inc., owner of the professional baseball team commonly known as the New York Yankees, brings this action to enjoin defendants from inducing baseball players employed by plaintiff to breach or repudiate their contracts of employment. As affirmative defenses defendants plead, at least by way of conclusion, that the contracts under which plaintiff and other similar clubs engage their players, and the agreements and rules under which the various leagues making up " organized baseball " conduct their games, are " monopolistic, inequitable, unconscionable and against the public policy of the State of New York and the United States of America."

Plaintiff moves to strike out those defenses as insufficient in law.

As defendants invoke the common law, a New York statute, the Clayton Act (U. S. Code, tit. 15, §§ 12–27) and section 3 of the Sherman Antitrust Act (U. S. Code, tit. 15, § 3), as well as section 1 of that Act (U. S. Code, tit. 15, § 1), I pass the question whether or not under any circumstances exhibitions of baseball could be regarded as trade or commerce within the meaning of any of those statutes (as to which see *Federal Club* v. *National League,* 259 U. S. 200, affg. 269 F. 681; *Atlantic Cleaners & Dyers* v. *U. S.,* 286 U. S. 427; *American Medical Assn.* v. *U. S.,* 317 U. S. 519; *Metropolitan Opera Co.* v. *Hammerstein,* 162 App. Div. 691; *Nasman* v. *Bank of New York,* 49 N. Y. S. 2d 181).

With that question eliminated, the sufficiency of the defenses seems to depend upon whether the answer shows that the player contracts, to protect which the action is brought, are themselves inherently illegal or merely that plaintiff itself is part of and engaged in an illegal conspiracy to restrain trade (*Small Co.* v. *Lamborn & Co.,* 267 U. S. 248, 252; *Sbicca-Del Mac, Inc.,* v. *Milius Shoe Co.,* 36 F. Supp. 623, 627; *Wilder Mfg. Co.* v. *Corn Products Co.,* 236 U. S. 165, 172).

If merely the latter, the defenses seem obviously insufficient. One who has purchased goods cannot defend an action for the price thereof upon the ground that the seller is engaged in a conspiracy to restrain trade, even though it be alleged that the sale was made in furtherance of such conspiracy and that the

seller conformed the terms of sale to standards sanctioned by the combination (*Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Wilder Mfg. Co.* v. *Corn Products Co.*, 236 U. S. 165, *supra; Small Co.* v. *Lamborn & Co.*, 267 U. S. 248, 252, *supra*). One who infringes a patent cannot justify his wrongful act by attacking the patentee or his assignee (plaintiff) as an unlawful combination in restraint of trade (*United States Fire E. C. Co.* v. *Joseph Halsted Co.*, 195 F. 295; *Motion Picture Patents Co.* v. *Eclair Film Co.*, 208 F. 416; *Western Electric Co.* v. *Pacent Reproducer Corporation*, 53 F. 2d 639, 640; *Radio Corporation of America* v. *Majestic Distributors*, 53 F. 2d 641). It is no defense to a suit for infringement of copyright of musical selections that the authors, composers and publishers have formed an unlawful combination in violation of the Sherman Antitrust Act (*Harms* v. *Cohen*, 279 F. 276; *M. Witmark & Sons* v. *Pastime Amusement Co.*, 298 F. 470, 480, affd. 2 F. 2d 1020). An employee cannot avoid being enjoined from disclosing trade secrets of his employer by showing that his employer's business is an unlawful monopoly (*Eastman Kodak Co.* v. *Powers Film Products, Inc.*, 189 App. Div. 556, 559–560). One who induces an employee to break his contract of employment cannot defend on the ground that the contract was inequitable or unfair to the employee, for the reason, among other things, that such a wrongdoer cannot pretend to play the part of a chivalrous protector of defrauded ignorance (*Haskins* v. *Royster*, 70 N. C. 601, 611).

But if a contract be so far a part of a conspiracy in restraint of trade that the illegality of such a conspiracy inheres in the contract itself, then such illegality may be set up as a defense to an action on the contract (*Bement* v. *National Harrow Co.*, 186 U. S. 70; *Cont'l Wallpaper Co.* v. *Voight & Sons Co.*, 212 U. S. 227, 260–261); or to an action to enjoin malicious interference therewith (*Ford Motor Co.* v. *Union Motor Sales Co.*, 244 F. 156; *Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373; *Fairbanks, Morse & Co.* v. *Texas Electric Service Co.*, 63 F. 2d 702, 705).

I search the answer therefore to see precisely what facts it alleges.

A fair summary of its allegations is as follows: Plaintiff and upwards of 370 other similar clubs give public exhibitions of professional baseball in over 300 cities in the United States and Canada and constitute an overwhelming majority of all clubs playing professional baseball in the United States and Canada and employ over 6,500 professional players. All such clubs and players are bound together by and are subject to and

operate under agreements known as the Major League Agreement, the Major-Minor League Agreement, and rules and regulations made pursuant thereto, and uniform player contracts.

Under such agreements, rules and contracts: (a) Each club has the exclusive right to the services of each player engaged by it during the player's professional baseball life, while the club may terminate the contract at its option upon ten days' notice; (b) the player cannot seek employment with any other club and no other club may employ him, but the club may assign him to play with another club, which then becomes solely liable for the player's compensation and may reduce the amount thereof; (c) the club may demote, reclassify, determine pay, and assign and shift players in its discretion, and the player has no recourse but to obey or give up baseball; (d) players cannot engage professionally in any other athletic sport.

The clubs claim and assert title to all players in their ranks and claim that once a player is employed by any club, he continues subject to its demands and is not entitled to contact any other club; and that claim and assertion is enforced through said agreements and through reservation lists and black lists and through threats and intimidation.

In order to give the scheduled exhibitions the players travel from State to State and to the District of Columbia; and the officers of the clubs arrange and provide for the transportation of the players and their equipment. One of the clubs is located in the District of Columbia.

The various clubs are engaged in buying, selling, exchanging, bartering and dealing in the players and their contracts.

These agreements and rules in conjunction with the player contracts constitute a monopoly under which the services of professional baseball players are unlawfully monopolized and the right of such players to seek employment in their profession is destroyed, and the relations of the players to the clubs and the relations between the clubs are minutely and rigidly determined in a manner that is contrary to the public policy of New York and the United States of America.

The contracts under which plaintiff employs its players are, as a result of the facts and circumstances hereinabove alleged, monopolistic, unconscionable, inequitable, and contrary to the public policy of the State of New York and the United States of America, and are not of a character which warrants the intervention of a court of equity to protect them.

Said agreements and rules and the operations under them, together with the sanctions resorted to and imposed thereunder, are contrary to and violative of the antitrust and anti-

monopoly statutes of the United States, specifically section 3 of the Sherman Antitrust Act (U. S. Code, tit. 15, § 3) and the Clayton Act (U. S. Code, tit. 15, §§ 12–27).

The conduct of the business of exhibitions of baseball playing under the control of and pursuant to said agreements and rules is contrary to the common law and said statutes and creates a monopoly and is a continuing contract, combination or conspiracy directed alike against the public, the players, and those undertaking to enter into the business of baseball independently of plaintiff and its associated clubs; and is in restraint of the right of private contract, and said contracts and agreements and combinations were designed to and do restrain trade and commerce in and among the several States and the District of Columbia.

All these allegations, even when read with the utmost liberality and with every reasonable inference in favor of the pleader, seem to me to leave it doubtful, to say the least, whether any illegal combination or conspiracy is shown. But however that may be, it seems to me patently clear that there is nothing in them which even remotely suggests that the contracts which plaintiff here seeks to protect are themselves illegal. What the allegations really amount to is that when a baseball player joins up by contract with a professional baseball club, he gives up a considerable measure of his liberty; but giving up a portion of his liberty is precisely what every man making any sort of a contract necessarily does to a greater or less extent. Giving up a part of our liberty is the price we all pay for the privilege of living in a civilized society. Sovereign States had to give up a portion of their liberty in order to form this nation; and now nations must give up a portion of their liberty in order to preserve civilization.

I thus regard it as patently clear that the defenses are insufficient as pleas of an illegal restraint of trade under either common law or statute.

Plaintiff, however, is seeking equitable relief, and I am not prepared to say that the trial justice may not wish to consider the setting of these contracts in determining whether such relief should be granted or withheld. Whether the defenses affirmatively pleaded add anything to what will appear from plaintiff's own proof or what defendants might show under a general denial, seems to me quite doubtful; but solely in order not to tie the hands of the trial justice, and without in any way intimating that proof of the facts which defendants have here alleged will deprive plaintiff of its right to relief, the motion to strike is denied.