# Richmond

## NORFOLK COCA-COLA BOTTLING WORKS, INC. v. G. KRAUSSE AND E. L. BOWEN.

March 22, 1934.

Present, All the Justices.

The opinion states the case.

*Vandeventer, Eggleston & Black,* for the plaintiff in error.

*A. A. Bangel,* for the defendants in error.

Holt, J., delivered the opinion of the court.

This action, by notice of motion, was brought by Mrs. G. Krausse against the defendant, Coca-Cola Bottling Works, Inc., and E. L. Bowen, a retail grocer, to recover damages for personal injuries suffered by the plaintiff as the result of swallowing glass contained in a bottle of Coca-Cola put on the market by the defendant, Coca-Cola Bottling Works, Inc., and partially drunk by plaintiff.

The notice of motion alleges: "That heretofore to-wit on the 6th day of October, 1931, the defendants offered for sale for human consumption, in the city of Portsmouth, Virginia, a certain bottle soft drink, known as Coca-Cola; that on said date, the undersigned plaintiff purchased from said defendants said bottle soft drink; that said drink without the knowledge of the plaintiff, contained chips of glass; that it became and was the duty of the said defendants to use due and proper care in the making of said drink or the container to have the same free from such chipped glass; that said defendants negligently failed to use due and proper care, and knew, or could, by exercise of reasonable care, have known that said drink sold this plaintiff contained chipped glass and the said plaintiff, in drinking said drink, did swallow chipped glass, whereby and by reason whereof, she became sick and sore and suffered great pain and mental anguish and did also expend a large sum of money in and endeavoring to be healed and cured of said sicknesses to the damage of the undersigned for five thousand dollars ($5,000)."

No plea was entered by Bowen and the case was tried by a jury, on the plea of not guilty, filed by the company, hereafter called defendant. There was a verdict for plaintiff against the company in the sum of $2,000. The court overruled the motion of defendant to set aside the verdict, but being of opinion that the verdict was excessive, over the objection of plaintiff reduced the amount of

damages to the sum of $750. A writ of error was awarded defendant by a justice of this court. Plaintiff also assigns cross-error to the action of the court in reducing the damages.

The facts are undisputed. On October 6, 1931, plaintiff purchased a bottle of Coca-Cola from E. L. Bowen, who had previously purchased the same from defendant. The bottle of Coca-Cola, along with some groceries, was delivered by an employee of Bowen to plaintiff at her home; the original cap was removed from the bottle in the presence of the employee; there was no breaking of glass in the uncapping; plaintiff, without examining it, drank from the bottle; she became strangled and began coughing; she coughed up a piece of glass which she removed from her mouth and threw away; she swallowed particles of glass which made her very sick; she consulted a physician the following day; she became very nervous; she was put on a diet by the physician; symptoms of indigestion followed the accident; she was, due to the strict diet upon which she was placed, unable to nurse her four-months-old baby; and she was under the supervision of the doctor for six or eight weeks. The fact of the finding of glass in the bottle was reported by the employee to Bowen. Particles of glass are still in the bottle.

On behalf of the defendant it was shown that the Norfolk Coca-Cola Bottling Works, Incorporated, operates a large bottling plant in the city of Norfolk. The bottled product, commonly known as Coca-Cola, is composed of Coca-Cola syrup and carbonated water. The Coca-Cola syrup is purchased by the bottling plant to which it is delivered in wooden barrels. It is doubly strained from the barrels into a closed glass-lined tank in the bottling plant. The water is filtered before it is carbonated. The empty bottles, after being inspected, are washed and sterilized by machinery. During the process of sterilization the bottles are washed with a spray of cold water and then they pass through three compartments contain-

ing solutions of hot caustic soda, then through a tank of fresh water, then are thoroughly scoured by two successive sprays of water. When the bottles emerge from the sterilizing and washing machine, they are again inspected over a strong light while empty. After leaving the washing machine and having been inspected, the bottles are conveyed by machinery to the bottling system where they are filled with syrup and carbonated water and capped by machinery. From the time the empty bottles enter the sterilizing machine until they emerge filled and capped, at the end of twenty-seven minutes, they are not touched by human hands.

According to the undisputed testimony of A. F. Cathey, the manager of the Norfolk plant, he has visited a number of other bottling plants, and the machinery and equipment used by the Norfolk Coca-Cola Bottling Works, Inc., "is the best in existence," and he has never seen any other machine "which is any nearer perfect than this one."

During the year 1931, this plant bottled 14,000,000 bottles of Coca-Cola. It received only nine complaints of foreign substances in the bottles, and no other complaints of glass in any bottles.

As we approach the issue here we should bear in mind certain general rules.

The manufacturer of an article is not liable for injuries resulting in its use to those with whom it has no contractual relations. *Tompkins* v. *Quaker Oats Co.,* 239 Mass. 147, 131 N. E. 456. Its liability for injuries suffered in the consumption of food preparations intended for human consumption is an exception equally well recognized. *Wilson* v. *J. G. & B. S. Ferguson Co.,* 214 Mass. 265, 101 N. E. 381.

"When the manufacturer puts the goods upon the market in this form for sale and consumption he, in effect, represents to each purchaser that the contents of the can are suited to the purpose for which it is sold, the same as if an express representation to that effect were imprinted

upon a label." *Tomlinson v. Armour & Co.,* 75 N. J. L. 748, 70 Atl. 314, 317, 19 L. R. A. (N. S.) 923.

In 26 C. J., p. 785, is this satisfactory statement of the present day rule now generally applied:

"Although differing in their reasoning, it is generally agreed by the authorities that a manufacturer, packer, or bottler of foods or beverages is directly liable to a consumer for an injury caused by the unwholesomeness or the unfitness of such articles, although purchased from a dealer or middleman and not from such manufacturer, bottler, or packer. And a manufacturer of food products has been held liable for injuries to one who did not buy the food from the manufacturer or from a dealer to whom the manufacturer had sold it, but who nevertheless had partaken of it and been injured thereby. In some of these decisions the doctrine of implied warranty has been assigned as a ground for such liability; but in others liability is based upon the ground of negligence, the applicability of the rule of implied warranty being denied." To the same effect see 11 R. C. L., p. 1122.

In the instant case it is to be borne in mind that the consumer purchased from a dealer who in turn had purchased from a manufacturer. In these circumstances some courts hold that there can be no recovery on contract, that there is no privity of contract between the consumer and the manufacturer, and no implied warranty as to quality. *McCaffrey v. Mossberg & Granville Mfg. Co.,* 23 R. I. 381, 50 Atl. 651, 55 L. R. A. 822, 91 Am. St. Rep. 637; *Flaccomio v. Eysink,* 129 Md. 367, 100 Atl. 510; *Crigger v. Coca-Cola Bottling Co.,* 132 Tenn. 545, 179 S. W. 155, L. R. A. 1916B, 877, Ann. Cas. 1917B, 572; *Birmingham Chero-Cola Bottling Co. v. W. G. Clark,* 205 Ala. 678, 89 So. 64, 17 A. L. R. 667; *Pelletier v. Dupont,* 124 Me. 269, 128 Atl. 186, 39 A. L. R. 972.

Others hold that there is an implied warranty where the article is purchased for human consumption. Under modern methods adopted in its sale the purchaser no longer looks to the dealer for he no longer purchases in

bulk. He has no first-hand information as to the contents of the package, and no information at all beyond what the label tells him. The manufacturer expects it to go to the consumer in the form in which it leaves the factory, hence the implied warranty. *Mazetti* v. *Armour & Co.,* 75 Wash. 622, 135 Pac. 633, 48 L. R. A. (N. S.) 213, Ann. Cas. 1915C, 140; *Parks* v. *C. C. Yost Pie Co.,* 93 Kan. 334, 144 Pac. 202, L. R. A. 1915C, 179; *Dothan Chero-Cola Bottling Co.* v. *Weeks,* 16 Ala. App. 639, 80 So. 734; *Ward* v. *Moorehead City Sea Food Co.,* 171 N. C. 33, 87 S. E. 958; *Watson* v. *Augusta Brewing Co.,* 124 Ga. 121, 52 S. E. 152, 1 L. R. A. (N. S.) 1178, 110 Am. St. Rep. 157; *Catani* v. *Swift & Co.,* 251 Pa. 52, 95 Atl. 931, L. R. A. 1917B, 1272; *Madden* v. *Great Atlantic & Pacific Tea Co.,* 106 Pa. Super. Ct. 474, 162 Atl. 687.

 It is not necessary that we here adopt either view. The plaintiff in her fifteen day motion for judgment charges that the "defendants negligently failed to use due and proper care, and knew or could, by the exercise of reasonable care, have known that said drink sold this plaintiff contained chipped glass." In other words, she bases her claim upon negligence and it was upon that theory that the case was tried, as plainly appears from all of the instructions. The jury by its verdict has said that the bottling company was negligent and to that finding we limit this inquiry.

To make the issue sharper, it may be said that the bottle out of which plaintiff drank was not tampered with after it left the bottling company, certainly the evidence does not show it. The bits of glass which did the damage must have been in it at that time. This bottle is in evidence and is not fractured.

 In such circumstances some courts hold that the doctrine of *res ipsa loquitur* should be applied. *Liggett & Myers Tobacco Co.* v. *Rankin,* 246 Ky. 65, 54 S. W. (2d) 612; *Atlanta Coca-Cola Bottling Co.* v. *Sinyard,* 45 Ga. App. 272, 164 S. E. 231; *Costello* v. *Cafeteria Co.* (1931) 18 La. App. 40, 135 So. 245.

Others hold that it does not apply. *Tonsman* v. *Green-glass*, 248 Mass. 275, 142 N. E. 756, 757; *Perry* v. *Kelford Coca-Cola Bottling Co.*, 196 N. C. 175, 145 S. E. 14; *Broom* v. *Monroe Coca-Cola Bottling Co.*, 200 N. C. 55, 156 S. E. 152.

We have held that it is an evidential presumption sometimes resorted to in the absence of evidence, but that it is not to be applied when evidence is at hand. *Riggsby* v. *Tritton*, 143 Va. 903, 129 S. E. 493, 45 A. L. R. 280; *C. & O. Ry. Co.* v. *Baker*, 149 Va. 549, 140 S. E. 648, 141 S. E. 753; (on rehearing) *Id.*, 150 Va. 647, 143 S. E. 299. Here evidence is at hand and the doctrine does not apply. It is sometimes said that the mere presence of a foreign substance will not sustain a recovery.

In *Swenson* v. *Purity Baking Co.* (1931) 183 Minn. 289, 236 N. W. 310, it appears that plaintiff claimed to have been made sick by the dead larva of a flour moth embedded in a loaf of bread. The court said: * * * "negligence must actually be proved and could not be here conclusively assumed merely from the circumstances stated; that the testimony for the defense showed absolutely that everything that could humanly be done to prevent the occurrence was done by defendant (it was not necessary for the court to go to that extent, however); that the defendant could only be held responsible for negligence which naturally produced the claimed results; that no case of negligence had been made out against the defendant or of liability on its part." There was a directed verdict for the defendant.

In *Nichols* v. *Continental Baking Co.* (C. C. A.) 34 F. (2d) 141, the negligence relied upon consisted in baking a cockroach in a loaf of bread sold to a dealer who in turn sold it to Mrs. Nichols. For the plaintiff evidence of negligence was the appearance of the cockroach. The defendant appeared to have exercised a high degree of care in the preparation of his products. Here also there was a directed verdict for the defendant.

In *O'Brien* v. *Louis K. Liggett Co.*, 255 Mass. 553, 152

N. E. 57, 47 A. L. R. 146, it was held that the mere presence of particles of glass in a strayberry shortcake bought at a drug store did not make out a case of *prima facie* negligence. This case followed *Ash* v. *Childs Dining Hall Co.,* 231 Mass. 86, 120 N. E. 396, 4 A. L. R. 1556. The court said that *Tonsman* v. *Greenglass, supra,* was not in point. It appears that the cake maker had exercised a high degree of care.

■ These facts appear in *Tonsman* v. *Greenglass:* The plaintiff bought from a neighboring grocer a loaf of bread manufactured by the defendant, labeled "Greenglass Bread, the Best Bread Baked." In the loaf was a piece of iron on which the plaintiff broke two teeth. The process of manufacturing was described. There was a verdict for the plaintiff which was affirmed. The court refused to apply the doctrine of *res ipsa loquitur,* but said: "The jury reasonably could infer that it got into the bread during the process of manufacture; because it was imbedded in the center or soft part, and the discoloration of the iron and the bad odor indicated that the metal was there while the dough was soft and during the period of fermentation or other chemical change." In other words, the presence of this bit of iron was evidence of negligence, which unexplained would have supported a verdict for the plaintiff. It did support it.

Many cases hold that negligence may be inferred. That of *Minutilla* v. *Providence Ice Cream Co.,* 50 R. I. 43, 144 Atl. 884, 887, 63 A. L. R. 334, is exceedingly instructive. There a customer bought at a restaurant ice cream wrapped in tissue paper by the defendant. In it were bits of glass. The court said: "Here the finding of the glass in the middle of the cream, and the tracing of the wrapped-up parcel uninterfered with until served to plaintiff, from the container provided by defendant and unwrapped by plaintiff, would justify a reasonable human being in drawing the logical inference that the glass got into the cream as a result of the maker's carelessness in mixing."

Again the court said: "When defendant then offered in evidence facts showing that the utmost care in straining and preparing ingredients for the cream was exercised by defendant at about the time this particular piece of cream was made, although the manufacture of the particular piece of cream causing the injury could be traced by defendant, the basis was furnished for a logical inference that defendant was not negligent. If the care commonly used by defendant had been exercised, the presence of these pieces of glass in the cream sold to the plaintiff would have been impossible. Yet the fact remains that there were no circumstances to warrant an inference of negligence on the part of any one other than defendant. *Davis* v. *Van Camp Packing Co.*, 189 Iowa 775, 176 N. W. 382, 17 A. L. R. 649. Only when no inference of defendant's negligence fairly may be drawn from the facts can a verdict be directed in his favor."

It further said: * * * "if a person is injured by a food product and he can show, by proper probative evidence, that he bought that food product in the original package in which it was put up by the maker, and that in that original package was a substance which was harmful or injurious to the human body, and he shows that to the satisfaction of the jury, then a presumption arises that the manufacturer of that food product was negligent in its manufacture," and that this was not a case for the application of the *res ipsa loquitur* doctrine.

In *Rozumailski* v. *Philadelphia Coca-Cola Bottling Co.*, 296 Pa. 114, 145 Atl. 700, 701, just as here, the plaintiff bought a bottle of Coca-Cola from a dealer and was injured from swallowing broken glass that came from the bottle. It appeared that the bottle had not been tampered with. The defendant submitted evidence of the use of the most approved appliances designed to prevent the presence of every foreign substance. A verdict for the plaintiff was affirmed. The court said: "It is a case where the accident proves its own negligent cause, and the jury would be permitted to infer negligence, as the court be-

low instructed it, from the fact that ground glass had been found in the bottom of the bottle. The particular dereliction is not shown, nor was it necessary; the negligent act is demonstrated by showing glass in the bottom of the bottle."

To the same effect see *Madden* v. *Great Atlantic & Pacific Tea Co., supra,* where a dead mouse was found in a package of tea.

In *Coca-Cola Bottling Co.* v. *Barksdale,* 17 Ala. App. 606, 88 So. 36, it appears that the company sold a bottle of Coca-Cola to a dealer who in turn sold it to the plaintiff. There was a dead mouse or part of a mouse in the bottle. Defendant's testimony tended to show that it had an up to date plant which was skillfully operated. The court said that the question of negligence was for the jury and a verdict for the plaintiff was sustained.

In *Clark Restaurant Co.* v. *Rau,* 41 Ohio App. 23, 179 N. E. 196, 197, the plaintiff, while eating a pie, swallowed some glass. The court said that "the mere existence of particles of glass in the food, furnished by the company to the defendant in error, is evidence of negligence." It sustained a verdict for the plaintiff.

In *Coca-Cola Bottling Co.* v. *McBride,* 180 Ark. 193, 20 S. W. (2d) 862, 863, the plaintiff bought a bottle of Coca-Cola from a dealer who had purchased it from the bottling company. She swallowed some hard substance and there still remained in the bottle a safety pin and "something black." The defendant introduced evidence to show that the bottles before being filled were sterilized and inspected and that its methods of refilling them would prevent the entry of such articles. The court said all of this was for the jury and affirmed the plaintiff's verdict.

In *Culbertson* v. *Coca-Cola Bottling Co.,* 157 S. C. 352, 154 S. E. 424, a yellow jacket was found in a bottle of Coca-Cola. Here again there was evidence of careful inspection but the court said it was a jury question.

In *Davis* v. *Van Camp Packing Co.,* 189 Iowa 775, 176 N. W. 382, 17 A. L. R. 649, it was held (syllabus) : "One

injured by eating food prepared wholly under the control and management of a manufacturer putting up food products for human consumption makes out a *prima facie* case of negligence on the part of the manufacturer by showing the fact of injury, and the burden is then on the manufacturer to establish his freedom from negligence."

It has been suggested that there is distinction in principle between the application of the above doctrine to unwholesome food sold for consumption and the finding of a foreign substance in food products. Such a distinction may possibly be drawn where the right of action is based upon implied warranty, but where the right of action is founded upon negligence, there can be no logical application of a different rule, whether the cause of injury be spoiled food or a foreign substance.

In *Boyd* v. *Coca-Cola Bottling Works,* 132 Tenn. 23, 177 S. W. 80, 81, the court said: * * * "when the manufacturer of this beverage undertook to place it on the market in sealed bottles, intending it to be purchased and taken into the human stomach, under such circumstances that neither the dealer nor the consumer had opportunity for knowledge of its contents, he likewise assumed the duty of exercising care to see that there was nothing unwholesome or injurious contained in said bottles. For a negligent breach of this duty, the manufacturer became liable to the person damaged thereby."

The *Boyd Case* was quoted with approval in the *Van Camp Case, supra,* where the court further said:

"While it is true that no particular act of negligence is shown by plaintiff, in the very nature of the case that could not be done. It is also true that, according to the defendant's evidence, its plant and method of manufacture are good—probably as good as any; still, it does appear that the method was not always adhered to by defendant's employees. We think, from all the circumstances shown by the evidence, the jury could have properly inferred and found that the can of beans in question, and perhaps a batch, as one of defendant's witnesses

calls it, were defective. Take the two Coca-Cola cases before cited, where a decomposed mouse was found in a sealed bottle of the fluid; the defendant's evidence tended to show care on the part of the company in bottling the product. In one of the cases it was shown the bottles were inspected under an electric light; that they were finally inspected after being capped or corked; that the bottles were thoroughly cleansed; that the fluid was strained into the bottle through a fine strainer, and so on. If all these precautions had been taken at the particular time when the bottles in question were filled and corked, it would seem improbable, if, indeed not impossible, that a mouse could get into the bottle. On the other hand, it would, of course, be impossible for a mouse to get into the bottle after it was corked up, and after it left the factory, and yet the mouse was in the bottle. Could the court say, as a matter of law, that the mouse did not get into the bottle during the process of manufacture? We think not. The jury, under all the circumstances, would have been justified in inferring and finding that some of the things usually done, in the bottler's method to prevent foreign substances getting into the bottle were not done. In other words, the circumstances were such that it would be for the jury to determine which was the more reasonable probability."

That foreign substance in food establishes a case of *prima facie* negligence, see *Rosenwaike* v. *Interborough Rapid Transit Co.,* 175 N. Y. S. 828 (broken glass in potatoes); *Ternay* v. *Ward Baking Co.,* 167 N. Y. S. 562 (when particles of glass were embedded in bread); *Freeman* v. *Schults Bread Co,* 100 Misc. 528, 163 N. Y. S. 396 (nail embedded in bread); *Chaproniere* v. *Mason,* 21 Times L. R. (Eng.) 633 (a large stone in bun); *Pillars* v. *R. J. Reynolds Tobacco Co.,* 117 Miss. 490, 78 So. 365 (decomposed human toe in chewing tobacco). See, also, note on this subject 63 A. L. R. 340. The heavy weight of authority is with the plaintiff.

We have seen that sometimes the presence of these

foreign substances is spoken of as an inference. An inference is more than a presumption or a substitute for evidence. It is a logical deduction from circumstances known to exist. *Freeman* v. *Schults Bread Co.*, 100 Misc. 528, 163 N. Y. S. 396; *Venbuvr* v. *Lafayette Worsted Mills*, 27 R. I. 89, 60 Atl. 770. * * * "negligence is usually an inference from facts." * * *

Sometimes it is spoken of as *prima facie* evidence of negligence and sometimes it is said it would justify a reasonable human being in drawing the logical inference that the glass got into the receptacle as a result of carelessness.

Foreign substances in food packages not tampered with are in themselves evidence of negligence. When that is shown, *prima facie* case has been made out, which, if not overborne by evidence for the defendant, is sufficient to sustain a verdict for the plaintiff. Evidence of a high degree of care may be sufficient, but such evidence is in conflict with a *prima facie* case, and should go to the jury. Its verdict must be sustained unless "plainly wrong."

This issue was properly submitted in clear cut instructions. There are but two of them, one given for the plaintiff and one for the defendant. They read:

Instruction No. 2-P.—"The court instructs the jury that if they find from the evidence that the defendant, Norfolk Coca-Cola Bottling Works, Incorporated, manufactured or bottled and placed upon the market the bottle of beverage called Coca-Cola in question in this case, for human consumption, and that the plaintiff, Mrs. Krausse, purchased the said bottle of beverage in due course of trade, and that as the result of the negligence of the Norfolk Coca-Cola Bottling Works, the said bottle of Coca-Cola so purchased contained a quantity of small particles or pieces of glass, and plaintiff was thereby damaged, it is your duty to return a verdict for the plaintiff."

Instruction No. 1-D.—"The court instructs the jury that the defendant, Norfolk Coca-Cola Bottling Works,

Incorporated, was not an insurer or guarantor of the absolue purity of its product but was under the legal duty of exercising a high degree of care to see that its drink was fit for consumption and free from foreign substances. And if the jury believe from the evidence that the said bottling company exercised a high degree of care in the washing, sterilizing and inspection of its bottles, then they should find for the defendant."

Other assignments of error are without merit.

█ The plaintiff assigns as cross-error the reduction of the jury's verdict. Under the facts in this case the action of the trial court was fully warranted.

The judgment appealed from is without error and is affirmed.

*Affirmed.*

EPES, GREGORY and BROWNING, JJ., dissenting.

GREGORY, J., dissenting:

I cannot agree with the conclusion reached in this case. It is held that the *res ipsa loquitur* doctrine does not apply, yet the finding of the glass in the bottle alone is sufficient evidence to sustain the verdict, notwithstanding the bottling company has shown by satisfactory evidence that it exercised the high degree of care required in such cases.

It is universally held that the bottling company in such cases is not an insurer, yet the effect of this decision is to hold the company as an insurer, because there has been shown no negligence against it. The mere happening of an accident in cases of this kind is not alone sufficient to establish liability upon the bottling company.