# Richmond

## NORFOLK COCA-COLA BOTTLING WORKS, INCORPORATED v. CHLOE LAND.

March 7, 1949.

Record No. 3445.

Present, All the Justices.

The opinion states the case.

*Rixey & Rixey*, for the plaintiff in error.

*A. A. Bangel,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Chloe Land filed in the court below a notice of motion for judgment against Norfolk Coca-Cola Bottling Works, Inc., to recover damages for personal injuries alleged to have been sustained as the result of drinking a bottle of Coca-Cola containing a worm. The gravamen of the action was that the defendant was guilty of negligence in failing to use "due and proper care" to see that the drink, manufactured, bottled and sold by the defendant, was "free from foreign substance unfit for human consumption." There was a verdict of $500 for the plaintiff upon which the trial court entered judgment.

We are asked to reverse the judgment because, it is said, the evidence fails to show that the defendant was guilty of any actionable negligence. Specifically, the defendant's contention is that the evidence fails to show that the worm was in the bottle when it left its custody, and that it is just as likely, or even more probable, that the worm got into the bottle after it had been opened by the plaintiff.

The plaintiff, who resides with her husband in the city of Portsmouth, testified that on the evening of July 26, 1947, about six p. m., she purchased from the near-by Dale Confectionery and carried to her home six bottles of Coca-Cola. Each of the bottles, she said, was capped and chilled. Upon reaching home she put four of the bottles in the refrigerator and opened the other two. She gave one to her husband's uncle, a then visitor in her home, and took the other for herself. She and her companion sat together in the living room and drank leisurely from the bottles. The uncle finished his bottle first and left the house. When she had almost completed the drinking of the contents of her bottle she observed what appeared to be a worm which was attached or stuck to the inside of the bottle near the bottom. She immediately became upset and nauseated. This condition continued during the night and the next day and required medical attention.

According to the plaintiff's further testimony, from ten to fifteen minutes passed while she was consuming the contents of the bottle. When she was not actually drinking from the bottle it stood open on the table, but all the while she remained seated near by. A part of the time, she said, she actually had her hand on the bottle while it rested on the table.

The evidence further discloses that the Dale Confectionery bought its Coca-Cola exclusively from the defendant company. When received by the confectionery the bottles were capped and sealed. Those sold to the plaintiff were delivered to her in the same condition.

It likewise appears that the supply of Coca-Cola delivered to the confectionery was bottled at the defendant's plant in Norfolk and thereafter stored for an undisclosed period at the defendant's warehouse in Portsmouth.

The evidence on behalf of the defendant tends to show that it used a high degree of care in cleansing, sterilizing and inspecting the empty bottles, and in bottling, sealing or capping its product. In this process, it is said, the best and most improved machines and methods known to the trade were used. Indeed, the executive vice-president and general manager of the defendant company expressed the opinion that "it would be impossible" for the worm to have remained in or fixed to the interior of the bottle during the cleansing process to which it was subjected before filling, or during the filling process through which it passed.

Despite this testimony it appears from the evidence of the plaintiff that the worm was in the bottle at the time she partook of its contents. Her further testimony that the worm was stuck or adhered to the interior of the bottle was corroborated by the display of the bottle at the trial.

In *Norfolk Coca-Cola Bottling Works* v. *Krausse*, 162 Va. 107, 121, 173 S. E. 497, we said: "Foreign substances in food packages not tampered with are in themselves evidence of negligence. When that is shown, a *prima facie* case has been made out, which, if not overborne by evidence for the defendant, is sufficient to sustain a verdict for the plaintiff.

Evidence of a high degree of care may be sufficient, but such evidence is in conflict with a *prima facie* case, and should go to the jury. Its verdict must be sustained unless 'plainly wrong.'"

We reaffirmed that holding in *Campbell Soup Co.* v. *Davis*, 163 Va. 89, 94, 175 S. E. 743, and in *Middlesboro Coca-Cola Bottling Works* v. *Campbell*, 179 Va. 693, 699, 700, 20 S. E. (2d) 479, 481, 482. Without repeating what was said in those cases we still adhere to the principles there enunciated.

But the defendant argues that the present case is distinguishable from these cases. In the previous cases, it is said, the principle that a foreign substance in a food package or bottled drink is in itself "evidence of negligence" was applied to a situation where the original package or bottle had not been tampered with or opened between the time it left the custody of the manufacturer and the discovery of the foreign substance therein.

In the present case, it is argued, the uncontradicted evidence is that the bottle was tampered with or opened after it left the custody of the defendant manufacturer, that it remained open on the table in the plaintiff's home for a period of some ten or fifteen minutes before the presence of the worm was discovered, and that at this time the worm may have gotten into the bottle. In this situation, it is said, there should be no presumption that the presence of the obnoxious matter was due to the negligence of the manufacturer.

Whether the worm was in the bottle at the time it left the custody of the defendant, or got into the bottle while it remained open on the table in the plaintiff's home, was a fact to be determined by the jury on the evidence adduced before it. See *Swift & Co.* v. *Blackwell*, 4th Cir., 84 F. (2d) 130, 131.[1]

---

[1] This was an appeal from the District Court of the United States for the Western District of Virginia, and therefore turned on the application of the law of this State. The Circuit Court of Appeals affirmed a judgment in favor of the plaintiff for damages suffered as the result of his having swallowed fragments of broken glass, alleged to have been contained in a

■ If the jury found from the evidence that the worm was in the bottle at the time it left the custody of the defendant manufacturer, then its presence in the original bottle or package was evidence of the defendant's negligence. If, on the other hand, the jury had found from the evidence that the worm was not in the bottle when it left the custody of the defendant company, but got into it while the bottle was left open in the custody of the plaintiff, the presence of the worm in the bottle was not evidence of negligence on the part of the defendant manufacturer.

This issue was squarely submitted to the jury by the instructions given. "Plaintiff's Instruction No. 3, As Amended," told the jury that "foreign substances in food or beverage packages, not tampered with, are in themselves evidence of negligence." By "Defendant's Instruction No. 2" they were told that the burden was on the plaintiff to prove by a preponderance of the evidence "that the foreign substance was in the bottle when it left the custody of the defendant bottling company," and that, "If after hearing all the evidence" the jury were in doubt as to whether such foreign substance was in the bottle when it left the custody of the defendant bottling company, or if it appeared "equally as probable that it was not in the bottle when the bottle left the custody of the defendant bottling company, as that it was," they should find for the defendant.

■ The jury's determination of this issue in favor of the plaintiff is, we think, amply supported by the evidence. As has been said, the bottles were capped and sealed when received by the Dale Confectionery from the defendant bottling company, and were sold to the plaintiff in the same condition. According to the plaintiff's evidence the worm was not discovered until she had drained the greater portion of the contents of the bottle. It is uncontradicted that the worm was not floating in the liquid but was stuck to the

---

sealed can of condensed milk. The appellate court held that the district judge correctly submitted to the jury the question whether the glass was in the can when it was sealed in the defendant's factory or was put into the can after it was opened and remained open for a short time in the plaintiff's home.

inside of the bottle near the bottom, and that it remained in that position up to the time of the trial. This would indicate that it had been in the bottle for some time. Moreover, it is highly improbable that the worm could have crawled up the side of the bottle and could have entered it without being observed by the plaintiff or her companion, who were all the time near by, and while the plaintiff was actually partaking of the contents from time to time. Nor is there any evidence that the worm was put into the bottle by the plaintiff, or anyone else.

Having concluded, as the jury must have done, that the worm was in the bottle when it left the custody of the defendant company, it was for the jury to say whether the evidence of the high degree of care used by the defendant company in cleansing, bottling and inspecting the beverage was sufficient to overcome the plaintiff's *prima facie* case. *Norfolk Coca-Cola Bottling Works* v. *Krausse, supra; Middlesboro Coca-Cola Bottling Works* v. *Campbell, supra.*

The issues were submitted to the jury on instructions which were highly favorable to the defendant. "Plaintiff's Instruction No. 3, As Amended," read thus:

"The court tells the jury that foreign substances in food or beverage packages, not tampered with, are in themselves evidence of negligence; and that when it is shown by the evidence, a *prima facie* case of negligence on the part of the manufacturer of said food or beverages is made out.

"But the court tells you that the *prima facie* presumption above referred to may be rebutted by evidence showing that the defendant exercised a high degree of care in the washing and filling of its bottles.

"The issue as to whether the defendant did exercise a high degree of care is for you to decide."

More appropriately the last paragraph should have read: "The issue as to whether the defendant did exercise such a high degree of care as to overcome such *prima facie* presumption of its negligence is for you to decide."

By "Defendant's Instruction No. 4" the jury were told that "even if the foreign substance complained of was bot-

tled at the bottling company's plant, and later consumed in whole or in part by the plaintiff, and even if she was injured thereby without negligence or fault on her part, yet if upon the whole case the evidence shows that the defendant bottling company exercised a high degree of care in the bottling, preparation and inspection of its product, the bottling company has discharged its full duty and the plaintiff is not entitled to recover damages from it."

The latter portion of this instruction was more favorable to the defendant than it need have been. It should have read: "yet if you believe from the evidence that the defendant bottling company exercised such a high degree of care in the bottling, preparation and inspection of its product as to overcome the *prima facie* presumption of its negligence, the plaintiff is not entitled to recover damages from it."

In appropriate language the jury were told that the plaintiff's action was "based on negligence," and that the defendant bottling company was "not an insurer or guarantor of the purity of its product."

On the whole we find no error in the record and the judgment is

*Affirmed.*