# Richmond

## PEPSI-COLA BOTTLING COMPANY OF NORFOLK, INCORPORATED v. ADDIE LEE McCULLERS.

March 7, 1949.

Record No. 3454.

Present, All the Justices.

The opinion states the case.

*Rixey & Rixey*, for the plaintiff in error.

*Charles H. Gordon*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Like the companion case of *Norfolk Coca-Cola Bottling Works* v. *Land, ante*, page 35, 52 S. E. (2d) 85, decided today, this is a tort action brought by Addie Lee McCullers against Pepsi-Cola Bottling Company of Norfolk, Inc., to recover damages alleged to have been sustained as the result of drinking a bottle of Pepsi-Cola containing "a small mouse and other obnoxious foreign matter." The allegations of negligence are the same as those made in the *Land Case*. The trial resulted in a verdict and judgment of $1,200 for the plaintiff.

As in the *Land Case,* we are asked to enter a final judgment for the defendant because, it is said, the evidence fails to show that the defendant was guilty of any actionable negligence; that it fails to show that the mouse was in the bottle when it left the custody of the defendant, and that it is just as likely or even more probable that it got into the bottle after it had been opened by the plaintiff.

Since there must be a new trial on another assignment of error, we will not give a detailed analysis of the evidence. Suffice it to say that the evidence on behalf of the plaintiff shows that on April 22, 1947, about seven p. m., her son, at her direction, purchased from a local grocer two bottles of Pepsi-Cola which were delivered to her, tightly capped and sealed. In the presence of her son the plaintiff opened one of the bottles and proceeded to drink the contents. After she had taken several drinks from the bottle, over a period of some fifteen minutes, she observed the presence of some foreign object which upon closer inspection turned out to be a small mouse. When not actually drinking from the bottle it remained open on the near-by table. She displayed the bottle and its obnoxious contents to several members of the family.

The plaintiff became nauseated and, to use her own words, "rushed out to the doctor" whose office was five or six blocks away. Leaving the doctor's office she took the bottle to her attorney. The next morning, at the request of the attorney, the carcass of the mouse was placed by a local druggist in a solution of formaldehyde. It was exhibited at the trial.

It was shown that the local grocer purchased his supply of Pepsi-Cola from the Newport News branch of the Pepsi-Cola Bottling Company of Norfolk, Inc. When delivered to the grocer the bottles were "securely capped" and were delivered by him to the plaintiff's son in the same condition. This particular bottle, the grocer said, had been in his possession for about a week, during which time, along with others, it was kept in the "main store."

The evidence discloses that the beverage was bottled at the defendant's plant in Norfolk.

As in the *Land Case*, the evidence on behalf of the defendant tends to show that it used a high degree of care in cleansing, sterilizing and inspecting the empty bottles, and in bottling or sealing the finished product. There is testimony that the best and most improved machines and methods known to the trade were used in this process. The superintendent of the defendant's bottling plant stated that, in his opinion, the body of a mouse would be thoroughly disintegrated in the cleansing process to which the bottles were subjected before filling, and that it would have been impossible for the carcass of the mouse to have withstood the cleansing process, or to have gotten into the bottle during the filling and bottling process.

Nevertheless, if the testimony on behalf of the plaintiff and her witnesses is to be believed, the mouse was in the bottle at the time she opened it.

In support of its contention that this evidence is insufficient to sustain the verdict the defendant makes the same argument which was advanced in the *Land Case*. It is argued that the principle announced in *Norfolk Coca-Cola Bottling Works* v. *Krausse*, 162 Va. 107, 121, 173 S. E. 497, that a foreign substance in a food package or bottled drink is in itself "evidence of negligence," should not be applied to the present case, because, it is said, the evidence shows that after the bottle in question had left the custody of the defendant manufacturer and was in the custody of the plaintiff, and while she was drinking from it, it stood open on the table for a period of some fifteen minutes before the presence of the obnoxious matter was discovered, and that at that time it may have gotten into the bottle.

With respect to this contention our conclusion here is the same as that in the *Land Case*, that is, whether the foreign substance was in the bottle at the time it left the custody of the defendant, or whether it got into the bottle while it was in the custody of the local merchant, or while it remained open on the table in the plaintiff's home, was

a fact to be determined by the jury upon proper instructions.

If the jury had found from the evidence that the obnoxious matter was in the bottle at the time it left the custody of the defendant bottling company, then its presence in the original bottle or package was evidence of the defendant's negligence. On the other hand, if the jury had found from the evidence that the obnoxious matter was not in the bottle when it left the custody of the defendant company, but got into it afterwards, its presence in the bottle was not evidence of negligence on the part of the defendant bottling company.

In our opinion this issue was not properly submitted to the jury. In "Plaintiff's Instruction No. B" it was said: "The court instructs the jury that they may infer negligence from the fact that foreign substance was found in the bottle, and the law does not require the plaintiff to show the particular dereliction."

This instruction was erroneous. As we pointed out in the *Land Case*, the inference of negligence on the part of the defendant bottling company from the presence of the obnoxious substance in the bottle should have been predicated upon a finding that the bottle was not tampered with after it left the custody of the defendant bottling company, and that the obnoxious substance was in the bottle at the time the defendant parted with possession of it.

As given, the instruction deprived the defendant of the defense that the mouse may have gotten into the bottle either while it was in the possession of the local grocer or while it was in the custody of the plaintiff herself.

Moreover, the instruction was defective in that it failed to tell the jury that the inference of negligence on the part of the defendant bottling company from the presence of the obnoxious substance in the bottle might be rebutted by evidence that the defendant had exercised a high degree of care in the cleansing and filling of its bottles.

The first paragraph of "Defendant's Instruction No. 8" properly told the jury that "the *prima facie* case of negligence" on the part of the defendant, which was made out

by the showing of the presence of the foreign substance in the bottle, was rebuttable by evidence that it had exercised a high degree of care in the cleansing, filling and inspection of its bottles.

But the last paragraph of the instruction was more favorable to the defendant than it should have been. It told the jury that if after hearing all the evidence they believed that the defendant had exercised "a high degree of care in the washing and filling of its bottles," their verdict should be for the defendant. It should have told the jury that it was for them to decide whether the evidence showed that the defendant had exercised such a high degree of care as to overcome the *prima facie* presumption of its negligence. See *Norfolk Coca-Cola Bottling Works* v. *Land, supra.*

We do not agree with the defendant's contention that "Plaintiff's Instruction No. A" is misleading. Except for the names of the parties, it is identical with the instruction which was approved in *Norfolk Coca-Cola Bottling Works* v. *Krausse, supra* (162 Va., at page 121).

The plaintiff's physician, Dr. Davis, testified that he treated her from April 22 through May 10 for gastritis and inflammation of the intestinal tract, brought on, as he thought, by reason of her having drunk the obnoxious contents of the bottle. During this period he visited her at her home twice and saw her at his office three times. On May 10 he discharged her as having been "cured of the acute condition" of which she had been complaining.

Upon cross-examination he testified that although he had treated her since May 10, he was unable to say whether her condition since that date was attributable to her having partaken of the contents of the bottle.

After this testimony of the physician the plaintiff and members of her household were permitted to testify, over the objection of the defendant, that since May 10 she had continued to suffer from nausea, stomach trouble and loss of appetite.

It is argued that in the face of the medical or expert testimony of Dr. Davis that he was unable to attribute the

plaintiff's condition subsequent to May 10 to the particular incident with which we are concerned, it was error to permit lay witnesses to give testimony from which the jury might infer a causal connection between her condition after that date and such incident. In other words, the contention is, such causal connection was a matter which could be established only by medical or expert testimony.

We do not agree with this contention. While there is some conflict of authority on the subject the greatly preponderating view is in favor of the admissibility of such evidence.

In Wigmore on Evidence, 3rd Ed., Vol. II, sec. 568, p. 660, it is said: "While on matters strictly involving medical science, as such, some special skill is needed, yet there are numerous related matters, involving health and bodily soundness, upon which the ordinary experience of everyday life is entirely sufficient. The line may sometimes be difficult to draw; but there can be no difficulty in determining that a layman may be received to state (for example) that a person was or was not apparently ill. Great liberality should be shown by the courts in applying this principle, so that the cause of justice may not be obstructed by narrow and finical rulings."

In accord with this view is the following statement in 20 Am. Jur., Evidence, sec. 859, p. 719: " The opinions of lay or nonexpert witnesses who are familiar with a person whose physical condition is in question and have had opportunity for observing him are competent evidence on issues concerning the general health, strength, and the bodily vigor of such person, his feebleness or apparent illness, or changes in his apparent state of health or physical condition from one time to another." See also, 32 C. J. S., Evidence, sec. 513-b, p. 196, *et seq.*

Under this principle the testimony of both the plaintiff and other lay witnesses is admissible. 20 Am. Jur., Evidence, sec. 859, p. 720; 32 C. J. S., Evidence, sec. 513-a, p. 191, *et seq.*

In 20 Am. Jur., Evidence, sec. 860, p. 721, the limitation on the rule is thus stated: "The rule permitting lay or nonexpert witnesses to testify to the apparent physical condition of a person which is open to ordinary observation by persons of common experience does not extend to permit such witnesses to testify as to the existence, nature, or character of latent conditions or to the existence of a particular disease which is discoverable, or the nature and character of which is determinable, only through the peculiar experience, knowledge, and training of a physician. Generally, opinions of such (lay) witnesses are limited to opinions as to physical condition. * * *"

The previous holdings of this court have been in accord with this view. In *Blue Ridge Light, etc., Co.* v. *Price,* 108 Va. 652, 656, 62 S. E. 938, we held that lay witnesses who were frequently with the plaintiff and in a situation to know and speak of her condition were competent to testify that she did not appear to have such use of her shoulder as to enable her to carry on her work as a seamstress, and that since the accident, due to the injury, she had not been able to follow her occupation. We there pointed out the distinction between competency of lay witnesses to testify as to the physical appearance of a person and their incompetency to testify as to a particular state or character of a disease.

In *Shenandoah Valley Loan, etc., Co.* v. *Murray,* 120 Va. 563, 578, 91 S. E. 740, we held that the testimony of a lay witness that the plaintiff "seemed to be suffering and nervous" was admissible.

In *Chesapeake, etc., R. Co.* v. *Hoffman,* 109 Va. 44, 64, 65, 63 S. E. 432, we held that it was not error to permit a plaintiff to testify that since the injury he was unable to do such work as he had theretofore done.

Moreover, such testimony is commonly admitted in the trial courts throughout the State.

In the case before us the evidence complained of related merely to the physical condition of the plaintiff and not to the existence or character of a disease. It came from

the plaintiff herself and the members of her family who had ample opportunity of judging her apparent physical condition. It requires no medical training to perceive that a person is nauseated, lacks appetite, or is losing weight. These physical characteristics are incidents of everyday life.

The fact that Dr. Davis was not able to trace a causal connection between the plaintiff's physical condition after May 10 and her having drunk the contents of the bottle did not, in our opinion, require the exclusion of the evidence of these lay witnesses. The question of causal connection was for the jury upon a consideration of all of the evidence, including that of the physician and that of the lay witnesses. 32 C. J. S., Evidence, sec. 572, p. 416, *et seq.*

As was said in *Webb v. Chesapeake, etc., R. Co.*, 105 W. Va. 555, 144 S. E. 100, 103,[1] "The testimony of expert witnesses is not exclusive, and does not necessarily destroy the force or credibility of other testimony. The jury has a right to weigh the testimony of all the witnesses, experts and otherwise; * * *."

Inasmuch as there must be a new trial, at which a different result may be reached, it is not necessary that we consider the defendant's assignment of error that the verdict is excessive.

Because of the error in granting "Plaintiff's Instruction No. B" the verdict is set aside, the judgment is reversed, and the case is remanded for a new trial in conformity with the views here expressed.

*Reversed and remanded.*

---

[1] Certiorari denied, 278 U. S. 646, 49 S. Ct. 82, 73 L. Ed. 559.