# Richmond

## THE NEWPORT NEWS COCA-COLA BOTTLING COMPANY, INC. v. ELAINE BABB.

January 16, 1950.

Record No. 3561.

Present, All the Justices.

The opinion states the case.

*Charles E. Ford*, for the plaintiff in error.

*Thomas A. Williams, L. C. O'Connor* and *Charles H. Gordon*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is another case in which recovery is sought against a bottling company for injury alleged to have been suffered by drinking from a bottle of Coca-Cola which contained obnoxious foreign matter.

We have twice recently in *Norfolk Coca-Cola Bottling Works* v. *Land*, 189 Va. 35, 52 S. E. (2d) 85, and *Pepsi-Cola Bottling Co.* v. *McCullers*, 189 Va. 89, 52 S. E. (2d) 257, stated the rules for determining the liability of the bottler in this particular class of cases,—that is, where the beverage has not been purchased by the consumer directly from the manufacturer, and the container of the drink is enclosed by a cap which it is possible to remove and replace by the use of care.

Elaine Babb, sometimes hereinafter referred to as the plaintiff, instituted this action by notice of motion against the Newport News Coca-Cola Bottling Company, Inc., for damages which she alleged she suffered as a result of drinking a portion of a bottle of Coca-Cola, which contained a decomposed snail or slug. The allegations of her notice of motion are to the same effect as those in the *Land* and *McCullers Cases*. After hearing the evidence and instructions of the court, the jury returned a verdict for $2,500 in favor of the plaintiff.

The defendant bottling company asks us to set aside the verdict on the grounds that there was no evidence of actual negligence on its part, for misdirection of the jury by the court, for the admission of improper evidence, and because the damages were excessive.

The facts in this case, in effect, are much like those in the *Pepsi-Cola Case*, and the law involved on the principal issue is precisely the same.

We will not undertake to set out the evidence in detail, since for reasons hereinafter assigned, there must be a new trial. Briefly stated, the pertinent evidence shows the following:

Elaine Babb, twenty-seven years old, the wife of a soldier in the United States Army stationed at Fort Monroe, Vir-

ginia, was employed as a clerk in the Finance Office of the Army at that military post.

On the afternoon of October 10, 1947, M. M. Toulson, also an employee in the same office, left the Finance Department building, where he and a number of other clerks, male and female, were employed, to obtain some bottles of Coca-Cola for himself and his fellow employees. He went down the back steps of the building, across the open courtyard to a temporary building, twenty-five to forty yards distant, where a Coca-Cola vending machine, owned and operated by the Post Exchange of the Army was located. He purchased three or four Coca-Colas, including one for himself, opened each of the bottles, and retraced his steps across the open courtyard, up the back steps of his building, into the office occupied by Mrs. Babb and the other clerks. He placed one of the bottles on the desk of Mrs. Babb and distributed the others to his friends.

Mrs. Babb took a sip out of the bottle, exclaimed that it didn't taste right and a slight discussion followed. She was told that, "after you drink cokes for a while you don't taste anything." She went back to work and thereafter took several sips. She felt something slimy in her mouth hitting against her teeth. She immediately spit the matter out into a trash can and said, "There's something in this bottle." She went to a washroom where she became ill. Upon her return, there was found floating in the liquid remaining in the bottle something which looked very much like a snail or worm. Someone told her to see a doctor and get a lawyer. She called a representative of the defendant, and within a short time took the bottle and its contents to a laboratory for an analysis. She thereafter made claim against the defendant for damages and employed counsel to represent her.

Mrs. Babb testified that after drinking the Coca-Cola, she became ill, subsequently lost weight, and continued in bad health to the day of the trial of this case on December 6, 1948. She said that her illness was aggravated by reason of her anger over the fact that representatives of the bottling

company had investigated her character, conduct and background after she filed a claim for damages.

A medical doctor, specializing in psychiatry, who saw her four or five days after October 10, 1947, on November 10, 1947, and the day before the trial of the case, said that he thought she suffered "emotional tension," and that he believed it was the "disgust and anger in which she got, following the drinking of this and I understand the rather insulting attitude of the company in that they tried not to believe her."

Coca-Colas were sold on the Army post through the Post Exchange. The Exchange purchased them from the Newport News Coca-Cola Bottling Company, Inc., and thereafter sold them over the counter and through vending machines to consumers. It operated and serviced twelve vending machines distributed in several buildings.

The Post Exchange customarily kept on hand a supply of about sixty cases in its main warehouse located to the rear of the Exchange building inside the Fort. The defendant delivered thirty or forty cases by truck to this warehouse about twice a week. The warehouse was under the control of a supervisor, who was aided by two truck drivers, all employed by the Post Exchange. The truck drivers used the Exchange truck to transport cases of the beverage from the warehouse to the various vending machines on the Post. While the transfer was being made, the truck was parked, the full bottles were taken off the truck, carried to the machines, and the empties in the machines were brought back and loaded on the truck.

The vending machine in the building near the Finance Office, from which Toulson purchased the bottles of Coca-Cola, was serviced about once a day. Each vending machine contained one hundred and eighty bottles, and it took five or ten minutes to service each machine, depending on the number of bottles to be exchanged. It was not shown how long the bottle in question here had been in the possession of the Post Exchange.

The evidence on behalf of the defendant tended to show that it used a high degree of care in the process of manufacturing and bottling Coca-Colas. The best and most improved machinery and methods known to the trade were said to have been used in this process.

Whether the foreign substance was in the bottle at the time it left the custody of the defendant, or whether it got into the bottle when the physical possession was in the intermediate vendor or some third party was a fact to be determined by the jury upon proper instructions. *Norfolk Coca-Cola Bottling Works* v. *Krausse*, 162 Va. 107, 121, 173 S. E. 497; *Norfolk Coca-Cola Bottling Works* v. *Land, supra; Pepsi-Cola Bottling Co.* v. *McCullers, supra.*

The trial court, over the vigorous objection of the bottling company, gave the following two instructions at the request of the plaintiff:

No. 1. "The Court instructs the jury that if they find from the evidence that the defendant, Coca-Cola Bottling Works of Newport News, Virginia, Incorporated, manufactured or bottled and placed upon the market the bottle of beverage called Coca-Cola in question in this case, for human consumption, and that the plaintiff, Elaine M. Babb, purchased said bottle of beverage in due course of trade, and that as a result of the negligence of the Coca-Cola Bottling Works of Newport News, Incorporated, the said bottle of Coca-Cola so purchased contained foreign substance, and plaintiff was thereby damaged, it is your duty to return a verdict for the plaintiff, unless you further believe that the plaintiff was guilty of contributory negligence."

No. 2. "The Court instructs the jury that they may infer negligence from the fact that foreign substance was found in the bottle, and the law does not require the plaintiff to show the particular dereliction."

The principal question of law in this case is identical with that in the *McCullers Case*. The two cases cannot be distinguished either on the facts or the law, except that here the handling of the bottle by third persons after it left the

possession of the defendant was greater and the opportunity for tampering with it enlarged. Since the continuity of possession between the bottler and the consumer was broken, the bottler was entitled to make the defense that the foreign matter may have gotten into the bottle while it was out of its possession.

In the *McCullers Case*, we held that an instruction in the exact language of instruction number 2 was erroneous. Mr. Justice Eggleston there said:

"As we pointed out in the *Land Case*, the inference of negligence on the part of the defendant bottling company from the presence of the obnoxious substance in the bottle should have been predicated upon a finding that the bottle was not tampered with after it left the custody of the defendant bottling company, and that the obnoxious substance was in the bottle at the time the defendant parted with possession of it.

"As given, the instruction deprived the defendant of the defense that the mouse may have gotten into the bottle either while it was in the possession of the local grocer or while it was in the custody of the plaintiff herself.

"Moreover, the instruction was defective in that it failed to tell the jury that the inference of negligence on the part of the defendant bottling company from the presence of the obnoxious substance in the bottle might be rebutted by evidence that the defendant had exercised a high degree of care in the cleaning and filling of its bottles."

See also, *Coca-Cola Bottling Works* v. *Sullivan* (1942), 178 Tenn. 405, 158 S. W. (2d) 721, 171 A. L. R. 1200; and an annotation, "Presumption of negligence from foreign substance in food." 171 A. L. R. 1209-1216."

■ Instruction number 1, except for the names of the parties is identical with an instruction which was approved in *Norfolk Coca-Cola Bottling Works* v. *Krausse, supra,* at page 121, and in *Pepsi-Cola Bottling Co.* v. *McCullers, supra,* at page 96.

However, the real issue could have been made clearer by

the addition of appropriate words setting out that the negligence of the bottling company must have occurred during the process of manufacturing or bottling the beverage, or during the time the bottle was in its possession.

Over objection of the bottling company, the trial court permitted the plaintiff to testify that some of her associates at Fort Monroe, as a result of the investigation of her character, conduct and background by the defendant, had asked her if she had been in jail, what kind of person she was and where she came from.

There was nothing in the evidence to indicate that the investigation on the part of the defendant was improper in any way. Evidence of the questions and expressions of her associates was pure hearsay, not connected with the defendant, and should not have been admitted. Plaintiff in her notice of motion only asked for general damages for the negligence complained of, that is, for the alleged negligence of the defendant in manufacturing and bottling its soft drink. She did not allege or ask for special or exemplary damages.

In view of what we have said, it is not necessary that we consider the defendant's assignment of error that the verdict is excessive.

For the reasons given, the verdict is set aside, the judgment is reversed, and the case is remanded for a new trial in conformity with the views here expressed.

*Reversed and remanded.*