## CIRCUIT COURT OF THE CITY OF PETERSBURG

McKinley R. Tucker

v.

Arlene F. Maywalt

April 1, 1987

By JUDGE OLIVER A. POLLARD, JR.

This matter is before the Court on Defendant's Motion to Set Aside or Remit the Verdict Award of the jury rendered on January 20, 1987, for the Plaintiff in the amount of $94,385.88.

Mr. Tucker was injured as a result of an automobile accident in this City on December 19, 1985. After a myelogram was performed on December 30th, it was determined that he had suffered a ruptured cervical disc, situated between the fifth and sixth vertebrae. The disc was surgically removed on December 31st. The Plaintiff remained in the hospital for five days following surgery and was allowed to return to work on February 17, 1986. He missed thirty-three days from work and his wage loss claim was $4,801.50. His medical bills totaled $7,084.38.

Trial judges in this State have the power and are clearly charged with the duty of setting aside verdicts where the damages are either so excessive or so small as to shock the conscience and to create the impression that the jury has been influenced by passion or prejudice, or has in some way misconceived or misinterpreted the facts or the law. Still there is no legal measure of damages in personal injury cases and their estimation is peculiarly within the province of the jury, who are deemed especially competent to determine such matters. It is well settled that the Courts will not disturb the verdict and grant a new trial unless the amount of award

is so great as to evince prejudice, partiality or corruption on the part of the jury or to show that they were misled by some mistaken view of the merits of the case. *Edmiston v. Kupsenel*, 205 Va. 198 (1964); Mich. Jur., vol. 5C, *Damages*, section 54.

In this case, the Plaintiff, who is sixty-two years old and the Director for Vocational Education for the Greenville County School System, testified that he suffered pain in his neck and side after the collision but was able to exit the car. He first saw a physician on December 26th, approximately one week after the accident, and was referred to Dr. Raymond Sweet, a neurosurgeon. He stated that he was in pain and on medication after surgery and still had days where he needed Motrin to control the pain; that he has muscle spasms from sitting in excess of twenty minutes or driving an automobile; that he also has problems with concentration. Mr. Tucker advised the jury that, because of his injury, he now had to have someone cut grass and rake leaves; that he had to give up his position with the church and could no longer lift anything, not even a briefcase, and that he had to give up construction work, which he was in the habit of doing for other faculty members during the afternoons and weekends.

Dr. Sweet testified that he found some disc material out of place or ruptured that required surgery to remove. On December 31, 1985, the effect of the operation was described as follows, "you have got two bone edges resting on each other and over time it grows completely together, which is what you want," which would result in some immobility of the neck. He allowed Mr. Tucker to return to work on February 17, 1986, with the understanding there would be no lifting. In April of 1986 Plaintiff reported to Dr. Sweet "some stiffness in the neck and occasional aching of the left arm." In August the doctor found Plaintiff was still having some numbness in the left thumb. He prescribed Motrin, an anti-inflamatory medication for pain. X-rays taken showed the area between the fifth and sixth vertebrae to be healing. In September of 1986, the doctor reported that Plaintiff continued to have some numbness in his left thumb, and occasional aching in his neck. Mr. Tucker also told the doctor that his left arm felt "more tired." The doctor's prognosis, at the trial, was "some achiness from time to time" and

"some thumb numbness" which will require checking every three months or so for quite a while. Dr. Sweet said he would rate Mr. Tucker's disability at five percent, mostly because of the thumb.

Dr. Herman Nachman, Defendant's medical expert and orthopedic surgeon found, upon examination of the Plaintiff on November 19, 1986, "some limitation of motion of turning his head side to side and looking up and looking down." "He had good grip in both of his hands, good power." "He moved all joints of fingers, his wrist, his elbows, his shoulders, normally." Mr. Tucker told Dr. Nachman that he had a little numbness in his thumb and first finger. Dr. Nachman's opinion was that Mr. Tucker had a ninety to ninety-five percent recovery from injuries received in the accident.

Plaintiff's statements to his physician, Dr. Sweet, as well as to Dr. Nachman were that problems consisted of occasional aching in the neck, numbness in his left thumb and first finger, and restricted movement in his neck. Such complaints, as well as the findings of the physicians, are totally inconsistent with the statement to the jury that he could not concentrate, could not lift or do any construction work or yard work since the accident.

I am aware that the jury has every right to consider all the evidence in the case, including that of medical experts and lay witnesses, and that the testimony of expert witnesses is not exclusive and does not necessarily destroy the force or credibility of other testimony. *Pepsi-Cola Bottling Company* v. *McCullers*, 189 Va. 89 (1949). It is my opinion, however, that the verdict rendered in this case is excessive and completely out of proportion to the injuries suffered by the Plaintiff, suggesting that the award was due to the jury's misconception or misinterpretation of the evidence presented relative to the extent of Plaintiff's injuries and the effect of such injuries upon the Plaintiff.

For these reasons the Court will direct that Plaintiff either consent to the entry of judgment for $60,000.00 or, in the alternative, submit to a new trial on the issue of damages. The amount does not reflect my personal opinion on the award that should have been rendered by the jury, but the point that I determine to be the uppermost limit of a verdict before such would become excessive.